Eric JOHNSON, Appellant,

v.

Lloyd Hilton SMITH, Independent Executor of the Estate of Reginald J.C. Hamilton, deceased, Appellee.

No. C14–84–524–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 20, 1985.

Rehearing Denied July 25, 1985.

James F. Tyson, Law Offices of Michael J. Smith, Houston, for appellant.

Carla Powers, of Chamberlain, Hrdlicka, White, Johnson & Williams, Houston, for appellee.

Before JUNELL, ROBERTSON and CANNON, JJ.

## OPINION

CANNON, Justice.

This appeal originates in a lawsuit brought on behalf of the estate of Reginald J.C. Hamilton to recover amounts due under a promissory note payable to him by appellant Eric Johnson. Appellant discontinued payments after Hamilton's death, believing his liability to be extinguished by a "death clause" contained in the note. Appellee sued alleging various instances of fraud, and a lengthy jury trial followed. Based on the jury's answers to special issues, the trial court entered judgment ordering appellant to fulfill the terms of the note and assessing actual and punitive damages for fraud. Appellant now brings twenty-three points of error. We believe there are four dispositive issues on appeal: (1) whether the probate court had jurisdiction of the cause; (2) whether the decedent ratified the note; (3) whether the evidence and pleadings supported findings of fraud; and (4) whether the amount of damages was proper. After reviewing the record and the applicable law, we believe the judgment of the trial court is correct.

Because of the lengthy and sometimes confusing record, we will first present a comprehensive summary of the facts. Reginald J.C. Hamilton (Hamilton or decedent), a 75 year old widower, owned a large home in an exclusive Houston residential area. Over the years, his house had become quite run down. It was filled with so many newspapers, boxes, hardware and junk, that it was necessary to make trails to permit passage from one room to another. Hamilton himself was described as a senile alcoholic; he was forgetful and had memory black-outs.

Hamilton tried for several years to sell his home. In the summer of 1979, appellant noticed the "for sale" sign in front of the house. He called the number on the sign and arranged an appointment to view the house with a Mrs. Ruth Powell, a friend of Hamilton's and the broker with whom the house was listed. Although Powell had a real estate salesman's license, she was relatively inexperienced and had limited knowledge of real estate transactions. Appellant visited the house on this and two other occasions, and on September 5, 1979, submitted an earnest money contract for the purchase thereof. This contract was rejected; however, a second earnest money contract prepared by Mrs. Powell was accepted by Hamilton. This contract called for a $552,582.00 purchase price to be paid over five years.

Appellant then contacted an attorney who drafted the promissory note and deed. At appellant's direction this note included the following clause:

It is [also] expressly understood and agreed in the event the Payee (Hamilton) dies at any time during the existence of this Promissory Note, the debt evidenced hereby shall automatically be extinguished, and the Maker (appellant) shall have no further liability for the payment of this Note.

Mrs. Powell refused to include this unilateral death clause, but agreed to present the note to Hamilton if it contained a mutual death clause to Hamilton's benefit. Ac-

cordingly, the following clause was included:

> [I]n the event the Maker dies during the existence of this note, the real property and improvements purchased by the Maker described hereinabove, shall revert back to the Payee.

At the time the note was executed, appellant was 28 years old, while Hamilton was 75 years of age. The deed and note were executed in Hamilton's home on October 18, 1979, with only appellant, Hamilton and Mrs. Powell present. The original note was retained by appellant and decedent was never given possession of the original or a copy of the note.

Approximately one year after purchasing the home, appellant decided to sell the property. He was approached by, and entered into an earnest money contract to sell the home to Michael Flynn and Richard Maier. Various documents concerning the sale, which were produced at trial, contained several noteable additions to and deletions from the original documents. First, the earnest money contract included an addendum which required that Flynn and Maier not communicate with Hamilton regarding the sale. Secondly, appellant provided them with a copy of the note which deleted two provisions: the one which provided the note could not be transferred or assigned without Hamilton's written consent, and the second of the death clauses which provided that the property would revert to Hamilton if appellant died during the term of the note. Johnson admitted at trial that he made these alterations.

Appellant made a total of three $50,000.00 payments to Hamilton, two before, and one after the subsequent sale. Hamilton died in February, 1981, and appellant refused to make further payments on the note, claiming that the death clause extinguished his liability. Appellee, executor of Hamilton's estate, brought suit to recover the remainder of the amount due, alleging various wrongdoings, including fraud, undue influence, and breach of contract. After entry of judgment favorable to appellee

on each of these issues, appellant perfected this appeal.

In his first two points of error appellant alleges that the statutory probate court did not have jurisdiction of this cause, and the action should have been tried in the district court. He initially contends that the controlling issues, namely the decedent's mental condition, appellant's intent, and the relationship between decedent and appellant, are not matters "incident to an estate", and therefore not within the purview of sections 5(d) and 5A(b) of the Probate Code.

As appellant suggests, section 5(d) provides that "[a]ll courts exercising original probate jurisdiction shall have the power to hear all matters incident to an estate." Tex.Prob.Code Ann. § 5 (Vernon 1980). Where the jurisdiction of the statutory probate court is concurrent with the district court, section 5A(b) directs that the statutory probate court has original probate jurisdiction over "any cause of action appertaining to estates or incident to an estate." Tex.Prob.Code Ann. § 5A(b) (Vernon 1980). Consequently, the resolution of appellant's challenge to the statutory probate court's jurisdiction turns on the scope of matters "appertaining to estates and incident to an estate." This issue is statutorily clarified with a definition of "incidental causes of action." They are:

> [T]he probate of wills, the issuance of letters testamentary and of administration, and the determination of heirship, and also include, but are not limited to, all claims by or against an estate, all actions for trial of title to land and the enforcement of liens thereon, all actions for trial of the right of property, all actions to construe wills, the interpretation and administration of testamentary trusts and the applying of constructive trusts, and generally all matters relating to the settlement, partition, and distribution of estates of wards and deceased persons.

Tex.Prob.Code § 5A(b) (Vernon 1980).

Appellant's entire argument rests on a single portion of that definition, namely

whether this action constitutes a claim by or against the estate. He relies on the recent supreme court holding in *Seay v. Hall* that survival and wrongful death actions are not incidental claims. *Seay v. Hall*, 677 S.W.2d 19 (Tex.1984). While we acknowledge the opinion's language concerning the classification of debts due the estate as claims outside the probate court's jurisdiction, we believe there are several distinguishable factors present in the instant action which remove it from the rule announced in *Seay*.

█ The single question in *Seay* was the effect of a wrongful death suit on probate jurisdiction. The only portion of the 5A(b) definition of incidental actions which could have brought that action into the statutory probate court's jurisdiction was the language referring to claims by an estate. The pleadings in our case, however, specifically referred to an action for the establishment of a constructive trust, which is listed in 5A(b). The jurisdiction of the probate court could therefore be upheld under this theory alone. *See generally Taylor v. Lucik*, 584 S.W.2d 503 (Tex.Civ.App.—Waco 1979), *rev'd on other grounds*, 596 S.W.2d 514 (Tex.1980). Furthermore, this was an action for the determination of a decedent's right to probate assets, which also falls within the general terminology of an action "incident to an estate." *English v. Cobb*, 593 S.W.2d 674 (Tex.1979). This action was within the jurisdiction of the statutory probate court, and consequently appellant's first point of error is overruled.

█ The application for probate filed by appellee and the order thereon both state that no action other than the filing of inventory, appraisement, and a list of claims was to be taken by appellee in the probate court. Decedent's will contained a similar provision. Appellant thus argues in his second point of error that the statutory probate court was restricted to those actions, and the court was without jurisdiction to consider the remaining matters.

While section 145(h) does contain the referenced language, it goes on to provide that other matters may be pursued in the probate court "where [the Probate] Code specifically and explicitly provides for some action in the county court." Tex.Prob.Code Ann. § 145(h) (Vernon 1980). Section 233 contains such a provision:

> Every personal representative of an estate shall use ordinary diligence to collect all claims and debts due the estate and to recover possession of all property of the estate to which its owners have claim or title....

Tex.Prob.Code Ann. § 233 (Vernon 1980). Although this section does not specifically delineate the proper forum for such an action, section 5A(b) sets the probate court's jurisdiction to encompass all suits filed on behalf of a decedent's estate, including estates administered by an independent executor. This action was indeed filed by appellee on behalf of decedent's estate to recover possession of the estate's property; as such, it falls within the scope of the probate court's jurisdiction. Appellant's second point of error is overruled.

At appellant's request, the court submitted an issue inquiring whether decedent ratified the promissory note and the death clauses included therein. The jury answered "we do not." Appellant now contends that ratification was established as a matter of law, or, alternatively, that the jury's failure to find ratification was against the great weight and preponderance of the evidence.

█ The definition and rules of ratification are simply stated. Ratification occurs when a person induced by fraud to enter an agreement continues to accept benefits under that agreement after he becomes aware of the fraud, or if he conducts himself so as to recognize the agreement as binding. *Sawyer v. Pierce*, 580 S.W.2d 117, 122 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Appellant had the burden to prove knowledge of the fraud and a voluntary, intentional choice to ratify the note in light of that knowledge. The key question is whether decedent had *full knowledge* of the fraudulent acts at the time of ratification. If the acts of rat-

ification are controverted, the question becomes one for the trier of facts. *Sawyer v. Pierce*, 580 S.W.2d at 123.

While the rules are simple, the complications come in the application to each unique fact setting. In this case, the facts alleged to have constituted ratification began sometime in November, 1980. Mr. Richter, the lawyer who represented Flynn and Maier, the buyers who purchased the home from appellant, met with Hamilton. At this meeting, Richter showed Hamilton a copy of the note containing the death clause. He and Hamilton discussed the clause, and Hamilton facially exhibited shock and surprise during this discussion, indicating that he was unaware of the existence of that provision. After this meeting, Hamilton called Richter and asked him to come by and talk to him about the note; however, the contents of these discussions were not admitted before the jury. On December 31, 1980, Hamilton received and retained a $50,000.00 payment on the note.

Since the evidence clearly indicates that Richter brought the death clause to Hamilton's attention, and Hamilton accepted a $50,000.00 payment after that disclosure, the pivitol ratification question is whether he possessed *full knowledge* of the fraud. Two circumstances lead us to the conclusion that the jury was warranted in refusing to believe that he possessed that knowledge. First, after decedent had been apprised of the presence of the death clause, he requested to speak with Richter again about the note. There was ample testimony that decedent was senile, extremely forgetful, and was often unable to understand his business affairs. A jury with this information before it could easily have concluded that although decedent heard Richter's description of the death clause, he did not understand, and therefore found it necessary to again contact Richter. There is no evidence to suggest that this second encounter clarified the matter further.

Appellee presents a second factor indicating that decedent's knowledge was less than complete. The record contains two originals of the first page of the promissory note. One states that appellant was to pay the purchase price *plus* interest, the other stating that the purchase price *included* interest. Were the former note to be operative, the additional interest payments would have amounted to some $100,000.00. Testimony throughout the trial addressed which note was controlling, and appellee attempted to prove throughout that appellant had fraudulently switched the front pages so as to extinguish the additional $100,000.00 interest liability. The only testimony indicating that decedent knew of this switch was appellant's statement to that effect. However, the page which deleted the additional interest was initialed *only* by appellant. In the absence of Hamilton's signed approval of this page, the jury was warranted in refusing to believe that he knew of this change in the promissory note.

■ Though the evidence concerning the acts of ratification was controverted, the jury heard adequate evidence of two fraudulently obtained provisions in the note, and evidence sufficient to suggest that these provisions were not fully understood by decedent. Under this state of the record, we cannot hold that ratification was established as a matter of law or that the jury's failure to find ratification was against the great weight and preponderance of the evidence. Appellant's third and fourth points of error are overruled.

■ In his seventh, eight and ninth points appellant challenges the following special issue:

Do you find from a preponderance of the evidence that the provision in the Promissory Note dated October 18, 1979, whereby the debt would be extinguished upon the death of Reginald J.C. Hamilton was inserted as a result of fraud practiced upon Reginald J.C. Hamilton by Eric Johnson?

You are instructed that "fraud" is the successful employment of cunning, deception or artifice to circumvent, cheat or defraud another to his injury.

The jury answered "we do." Appellant now contends, as he did in the trial court, that the definition submitted was incorrect as it did not require findings on the judicially established elements of fraud. *See Stone v. Lawyers Title Insurance Corp.,* 554 S.W.2d 183 (Tex.1977). While *Stone* admittedly lists six elements of fraud, that definition is applicable in instances where the alleged fraud is through a specific misrepresentation. Misrepresentation, however, is not the only method through which fraud is practiced. To the contrary, fraud may be acted as well as spoken. *See TenCate v. First National Bank,* 52 S.W.2d 323, 326 (Tex.Civ.App.—Fort Worth 1932, no writ). In such cases, the six-element definition of fraud by misrepresentation urged by appellant is inapplicable and improper.

The act of fraud here contested was the insertion of the death clause in the promissory note; no words were spoken, no misrepresentations made. The definition of fraud submitted to the jury was clearly and easily applied to this type of fraudulent conduct. The definition has been used and approved in prior cases. *Kunz v. Huddleston,* 546 S.W.2d 685, 690 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r. e.); *International Life Insurance Co. v. Herbert,* 334 S.W.2d 525, 530 (Tex.Civ.App. —Waco 1960, writ ref'd n.r.e.). We find no reversible error in the definition as submitted and appellant's seventh point of error is overruled.

Similarly, appellant suggests that without a finding on each of the six elements of fraud by misrepresentation, the issue submitted was not a controlling issue and could not form a basis for the judgment. Again, we disagree. The very presence of fraud in obtaining the death clause was clearly one essential to appellee's right of action. Consequently, this was a controlling issue and was not erroneously submitted to the jury. *See Sell v. C.B. Smith Volkswagen, Inc.,* 611 S.W.2d 897, 903 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Appellant's eighth point of error is overruled.

In his final challenge to the fraud special issue, appellant argues that there were no pleadings to support that issue. This objection was raised and overruled in the trial court. Appellee's pleadings included the following allegation of fraud:

> In order to induce Decedent to enter into the Earnest Money Contract, Johnson expressly and impliedly represented to Decedent that he would exercise good faith and fair dealing in carrying out his obligation under the Earnest Money Contract. These representations as made by Johnson were false and fraudulent and were known by Johnson to be false and fraudulent when made. In truth and in fact, Johnson had neither the intention of complying nor the ability to comply with the terms and provisions of the Earnest Money Contract, as evidenced by his actions subsequent to entering into the Earnest Money Contract.

As appellant points out, this contains no specific suggestion of fraud in the insertion of the death clause. He therefore argues that since special issues are to be submitted only upon issues raised by the written pleadings, this instance of fraud was erroneously included in the charge to the jury. *See Scott v. Atchison, Topeka and Sante Fe Railway Co.,* 572 S.W.2d 273, 277 (Tex.1978). While we agree with appellant's statement of the applicable law, we cannot agree with the strict construction of the pleadings necessary to reach his conclusion.

In order to support a special issue, the pleadings need not precisely match the issues submitted. Rather, a pleading is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of even this somewhat relaxed requirement is to give the opposing party sufficient information to prepare a defense. *Roark v. Allen,* 633 S.W.2d 804, 810 (Tex.1982). *See* TEX.R. CIV.P. 45, 47. Furthermore, the pleadings will not be considered defective if any missing allegations can be supplied from any attached exhibits. TEX.R.CIV.P. 59; *Hanger General Contractors v. Greater Swen-*

*son Grove Baptist Church*, 597 S.W.2d 32, 34 (Tex.Civ.App.—Austin 1980, no writ). Finally we note that where there are no special exceptions, as is the case here, a petition will be liberally construed in favor of the plaintiff. TEX.R.CIV.P. 45; *Roark v. Allen*, 633 S.W.2d at 809. With these rules in mind, we now review these pleadings.

■ As noted in the above quoted pleadings, appellee alleged that appellant fraudulently and falsely represented in the earnest money contract that he would exercise good faith and fair dealings in carrying out his obligations thereunder. One obligation in the contract was to pay the full purchase price for the home. However, in direct contravention of this agreement, appellant included a death clause which completely extinguished this liability. This provision was contained in the promissory note, a copy of which was attached to the pleadings. We believe that appellee's allegations and the information supplied by the note gave fair and adequate notice of appellee's claim of fraud in insertion of the death clause. Appellant's ninth point of error is overruled.

Points of error fourteen through nineteen each allege error in the submission of the following special issue:

### SPECIAL ISSUE: 8

Do you find from a preponderance of the evidence that prior to or at the time of the execution of the Deed and Promissory Note on October 18, 1979, Eric Johnson made a representation of material fact to Reginald J.C. Hamilton in one or more of the following particulars, if any: Answer "Yes" or "No" as to each subpart.

|   | Yes | No |
|---|---|---|
| a. That a Total purchase price of $552,582.00 would be paid by Eric Johnson to Reginald J. C. Hamilton for the house at 1512 South Boulevard. | yes | |
| b. That Eric Johnson would pay interest at 6% per annum to Reginald J. C. Hamilton on the unpaid balance of the purchase price on the house at 1512 South Boulevard. | yes | |
| c. That Eric Johnson would execute and deliver to Reginald J. C. Hamilton a Promissory Note with provisions consistent with those contained in the Earnest Money Contract dated October 8, 1979. | yes | |

■ In point of error fifteen appellant complains that the special issues submitted were erroneous because they did not inquire whether appellant *intended* to carry out his promises, a necessary element of actionable fraud. Although the special issues did not contain this specific inquiry, the jury was asked: (1) whether the representations made in special issue eight were false and known by appellant to be false when made; and (2) whether those representations were made as a material inducement for Hamilton to sell his home. These are equivalent to an intent to deceive. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 727 (Tex.1982). Appellant's fifteenth point of error is overruled.

As we construe appellant's fourteenth point of error, he attempts to argue there was no evidence that he did not intend to perform his promise to make the payment under the note. Similarly, in his eighteenth point of error, appellant contends that the jury's answers to special issues eight (a), (b) and (c) are so contrary to the great weight and preponderance of the evidence to be manifestly unjust. *See In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex. 1951). The thrust of both arguments appears to be that since the jury found in special issues six and seven that appellant had made all required payments prior to Hamilton's death, there was no evidence that he falsely made the representation of issue eight (a) and insufficient evidence that he falsely made any of the representations in special issue eight. In addressing both points we first note that although the stated points of error challenge only the eighth special issue, his argument concerns the falsity of the representations. The truth of the representations was questioned in special issue ten, which is unchal-

lenged by appellant. Despite this deficiency, we will address the argument raised.

■ As pointed out in *Dowling*, the intent element of an action for fraud is established if a person makes a false representation knowing it to be false and with the intent to induce action. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d at 727. Here, the representations were, of course, those listed in special issue eight. There is no question that the representations were made in order to induce Hamilton to sell the home. The key question then becomes whether there was sufficient evidence that appellant knew the representations to be false. The answer revolves around three fact patterns. First, there was ample evidence that appellant directed that the death clause be included, without ever consulting Hamilton. This clause, included in the original note, effectively extinguished any further debt upon Hamilton's death. This alone presents sufficient evidence that appellant from the outset did not intend to pay the full purchase price, and therefore falsely represented that he would. Secondly, as previously discussed, one of the promissory notes in evidence stated that appellant was to pay the purchase price plus six percent interest. This page was switched so the purchase price included interest. Furthermore, the note including interest was not signed by Hamilton. This is adequate proof that appellant falsely represented that he would pay an additional six percent interest. Finally, evidence previously discussed clearly indicated that the earnest money contract contained no mention of a death clause extinguishing liability; yet, the note did just that. There was also evidence that appellant hired an attorney to prepare the note from the earnest money contract. Since the note made no mention of the clause, and appellant thereafter included it, the jury could have believed that appellant's representation that he would prepare the note per the earnest money contract was false. All of these factors present some evidence that appellant knowingly made false representations. Appellant's eighteenth and fourteenth points of error are overruled.

■ Appellant next contends that special issues eight (a) and eight (b) are in fatal conflict. To support this point, he reasons that since eight (a) asked whether he represented that the total purchase price was $552,582.00, special issue eight (b), inquiring whether he was to pay additional amounts of interest, necessarily was incorrect as it would have made the total purchase price far in excess of the $552,-582.00. His basic argument, then, is that the term "total purchase price" necessarily included interest as a matter of law. The facts of this case do not support this reasoning. As noted earlier, two different first pages of the original promissory note were introduced into evidence, one stating that appellant was to pay the purchase price *plus* interest, the other indicating that the stated purchase price *included* interest. Special issue eight gave the jury the opportunity to decide which of those notes was operative. By their answers, they determined that the interest payments were additional. Eight (a) and (b) represent a choice for the jury, not a fatal conflict between issues. Appellant's sixteenth point of error is overruled.

■ In his seventeenth point of error appellant claims that the trial court erred in submitting special issue eight (c) because it "does not constitute an ultimate issue." In his argument, he reurged his trial objection that the phrase "consistent with the Earnest Money Contract" amounted to a comment on the weight of the evidence. His appellate argument appears to be that the judge should have defined the phrase, "consistent with." Considering the point of error in its entirety, we construe his final argument above to be controlling and will only address that appellate complaint. The phrase "consistent with" is not a term of art. It does not, as appellant argues, imply identity of terms. As such, no legal definition was necessary. Appellant's seventeenth point of error is overruled.

In point of error nineteen appellant suggests that the trial court erred in submitting special issues 8(b) and 8(c) because

there were no pleadings to support those issues. His argument, however, concerns whether appellee adequately pled fraud in relation to those special issues; which was raised in special issue number 10. Once again, although appellant does not properly challenge the fraud special issue, we will nonetheless dispose of it.

As recited above, special issues 8(b), 8(c), and 10 inquired whether appellant agreed to pay 6% interest on the balance of the purchase price, whether he agreed to deliver a promissory note with provisions consistent with the earnest money contract, and whether those representations were false. In deciding whether appellee's pleadings support those issues, we refer to our previously detailed rules of construction, liberally construing the pleadings to determine whether the pleadings and the attached exhibits gave proper notice of appellee's cause of action. *See Roark v. Allen*, 633 S.W.2d at 809–10. We believe they do. Appellant alleged several counts of fraud, though admittedly none were specifically directed at the interest or earnest money contract provisions. However, the earnest money contract stated a full purchase price and the note included a death clause extinguishing that liability. These attached documents certainly gave adequate notice that appellant intended to prove fraud in the preparation and alteration of the note. Likewise, the pleadings included a copy of a note requiring an additional 6% interest to be paid on the balance of the note, along with one including that interest. Paragraph 34 of appellee's petition requested that damages be assessed for interest as provided in the note. We believe this was sufficient to give appellant fair notice that he would have to defend against a claim that he falsely represented that he would pay 6% interest and subsequently altered the note to delete that interest. Appellant's nineteenth point of error is overruled.

In his twentieth point of error, appellant contends that there was no evidence to support the jury's answer to special issue number twelve. The jury there found that $361,102.43 would fairly compensate appellee for damages resulting from appellant's false representations. Appellant suggests that the only evidence of damages was a group of calculations on the blackboard. Appellant objected to these calculations, and his objection was sustained. In addressing this point, we first note that although the blackboard calculations were stricken, the oral testimony of the calculations was not objected to. More importantly, however, there was ample additional evidence to support the jury's findings. For example, appellant agreed to pay $552,582.00 for the home, but made payments totaling $150,000.00. Since the jury found that appellant made fraudulent representations concerning their agreements, from this fact alone, the jury could have found damages for the remaining amount, $402,582.00. *See Crawford Chevrolet, Inc. v. Rowland*, 525 S.W.2d 242, 243 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). Similarly, based on the fraudulent switching of the first pages of the note, the jury could have found damages in the amount of 6% interest per year on the unpaid balance; that amount being the difference between the note adding interest to the purchase price, and the substituted page including the 6% interest. Though this calculation is complicated, the jury did receive guidance in the figures from witness testimony. In sum, there was ample evidence of damages resulting from appellant's fraud.

In his twenty-first and twenty-second points of error, appellant complains that there was no, or alternatively insufficient, evidence to support the jury's award of $150,000.00 in punitive damages. He raises three specific arguments: (1) there was no evidence concerning a critical element of fraud, namely whether appellant intended not to perform his obligations in the future; (2) there was no evidence of actual damages from the fraud; and (3) he had already demonstrated his good faith by making the first three payments. However, each of these issues has been raised, discussed, and overruled in points of error

fifteen, twenty, and eighteen, respectively. Furthermore, there was more than adequate evidence appellant intentionally committed fraud for purposes of injuring decedent, thereby fulfilling the requirement for the award of punitive damages. *See Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290, 299 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). Appellant's twenty-first and twenty-second points of error are overruled.

In his final point of error, number twenty-three, appellant contends the judgment is erroneous because it granted appellee damages for breach of contract and for fraud. Appellant has not, however, complied with Rule 414 by citing the portion "of the record where the matter complained of is to be found." The transcript before us contains 500 pages; the statement of facts contains 1,100 pages. Appellants' objection to the court's charge cover 10 pages and his requested instructions and issues cover 26 pages. Even though not required to do so, we have examined the record and fail to find any objection to the special issues submitted as a basis for the present objection. *See* TEX.R.CIV.P. 414; *Arndt v. National Supply Co.*, 650 S.W.2d 547, 548–49 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Neither do we find any such objection made to the entry of judgment. Finally, we do not find in the motion for new trial any objection on the basis now asserted. Appellant has waived his twenty-third point of error. *See* TEX.R.CIV.P. 324; *Texas Steel Co. v. Douglas*, 533 S.W.2d 111, 117 (Tex.Civ.App. —Ft. Worth 1976, writ ref'd n.r.e.).

In addressing appellant's contentions, we have only briefly recited the relevant facts. The complete record presents a sordid picture of an opportunistic young man defrauding and thoroughly taking advantage of an elderly, senile, alcoholic man. The consideration of these reprehensible actions gave the jury a more than adequate basis for their decision.

Appellant's remaining points of error are not dispositive of the appeal. The judgment is affirmed.