**Mike SPANGLER, Appellant,**

v.

**Orville D. JONES, Appellee.**

No. 05–89–00995–CV.

Court of Appeals of Texas, Dallas.

July 27, 1990.

Rehearing Denied Sept. 19, 1990.

Joann N. Wilkins, Dallas, for appellee.

Carl David Adams, Dallas, for appellant.

Before HOWELL, LAGARDE and THOMAS, JJ.

## OPINION

LAGARDE, Justice.

Mike Spangler, appellant, appeals from an instructed verdict granted in favor of

Orville Jones, appellee.[1] Spangler raises three points of error, all complaining of the instructed verdict; Jones raises one cross-point. For reasons that follow, we reverse and remand this cause to the trial court for a new trial.

Jones and Conner were owners of a corporation called National Insurance Managers, Inc. (NIMI). Jones owned 60% and Conner owned 40%.[2] NIMI placed excess and surplus lines of insurance for clients through an insurance company and, as a result of the placement, NIMI received a percentage of the premiums charged. Although the principal function of NIMI was to place coverage for its clients, there was also a need for adjustment and payment of claims made under the policies; thus, Spangler was employed with NIMI as a claims manager while Conner and Jones were primarily in charge of production and underwriting. Thereafter, Jones and Spangler formed Trinity Loss Managers, Inc. The business was formed by Spangler and Jones to engage in adjusting insurance claims in association with NIMI. Spangler acquired 20% of the issued and outstanding shares of stock in Trinity. Thus, of the 1,000 authorized and issued shares of Trinity, Spangler owned 200, and Jones owned 800 shares.

In June 1981, Jones and Conner approached Spangler and explained that they had entered into negotiations to sell the business and assets of NIMI to Unigard Mutual Insurance Company. Jones and Conner explained, however, that certain economic and contractual obstacles existed to a sale directly from NIMI to Unigard and that they desired to locate a "vehicle" corporation to transfer all of the assets of NIMI to Unigard so that the sale could be consummated. They also told Spangler that Unigard wished to secure employment

agreements from the individuals at NIMI. Because the ownership of Trinity (Spangler and Jones) was not the same as NIMI (Jones and Conner), Spangler, Jones, and Conner entered into an oral agreement to become partners and co-venturers in the transaction from NIMI to Trinity and from Trinity to Unigard.

In order for Conner, who did not own any stock in Trinity, to be compensated for his 40% ownership in NIMI, it was agreed that Jones would transfer shares of stock in Trinity to Conner and that Spangler would sell 150 shares of his stock in Trinity at one dollar per share. The result would be that Jones would own 57.5% of Trinity, Conner would own 37.5% of Trinity, and Spangler would own 5% of Trinity. The parties further agreed that the "restructured" Trinity would then enter into a consideration-free transaction with NIMI whereby all assets would be transferred to Trinity without consideration. Trinity shareholders would then enter into the proposed sale of each shareholder's stock in Trinity to Unigard. As part of the explicit terms of the oral venture agreement among the parties, each shareholder in Trinity would be entitled to receive his proportionate and pro rata share of all benefits paid by Unigard to purchase the "new" business.

Spangler subsequently refused to honor his agreement to sell his shares for one dollar each. Spangler eventually agreed to transfer 150 shares of stock in Trinity to Conner for $5,000 and a $3,000 per year raise in the employment contract with Unigard. Based upon these oral agreements, all of the parties agreed that Jones would travel to Seattle, Washington, the home office of Unigard, and, acting as the joint representative of the shareholders in Trinity, would negotiate the terms of the pro-

---

1. Spangler originally filed suit against Jones and Stephen Conner. Both Jones and Conner received instructed verdicts in the various causes of action against them. However, Spangler only appeals the instructed verdict granted in favor of Jones. In its fourth reply point, Jones asserts that the judgment in favor of Conner should be affirmed. At oral argument, Spangler confirmed that he did not appeal the judgment in favor of Conner and does not assert

that it should be reversed; therefore, we will not address Jones's fourth reply point as it is moot.

2. The stock in NIMI was originally held by five individuals, including Jones and Conner. Jones and Conner subsequently acquired the shares held by the other three individuals.

posed agreement of sale between Trinity and Unigard. Pursuant to the parties' oral agreement, Jones attended the negotiations. Upon Jones's return from Seattle, he presented an agreement of sale to Spangler and Conner. After examining the terms of the agreement of sale, Spangler discovered that the terms were contrary to the oral agreement among him, Jones, and Conner. Rather than equal pro rata distribution of the benefits from the sale of stock, in strict accordance with the ownership percentages orally agreed upon by the parties, the terms of the agreement of sale were such that Spangler was not treated as an equal 5% owner with regard to consideration paid to each shareholder. Only Jones and Conner participated in a short-term incentive program. In addition, the agreement of sale created conditions precedent to Spangler's benefits, and the conditions precedent did not apply to Jones and Conner. Specifically, the agreement of sale provided that upon the occurrence of a certain condition precedent, which could occur before the contingency payment would be fully earned and which was not under Spangler's control, the contingency offer would lapse as to Spangler.

Upon learning of the discrepancies, Spangler confronted Jones and Conner. Spangler testified that both Jones and Conner told Spangler that the deal with Unigard was already struck and that Unigard would not agree to any changes whatsoever in the terms of the agreement of sale. Spangler was told that "that's the way Unigard wanted it" and that the agreement of sale "can't be changed." Spangler also testified that they stated that it was an "all or nothing deal." Spangler stated that, faced with the unfair economic duress caused by the conduct of Jones in violating the shareholders' agreement regarding the transaction, Spangler elected to consent to the agreement of sale. However, between the date of execution and the date of closing, Spangler continued to attempt to call upon Jones and Carter to modify the terms or equalize the benefits, if not with Unigard, among the individuals. Spangler testified

that Jones and Conner agreed to talk about the idea later, but they later refused to discuss the matter. Spangler stated that only on the day he actually signed the Agreement of Sale [3] did he realize that the discrepancies would not be adjusted. Thereafter, Spangler prepared a letter and presented it to Jones and Conner to acknowledge. Spangler told them that they had to acknowledge the letter or he would refuse to transfer the stock from Trinity to Unigard. The letter states:

Dear Steve [Conner] and Orville [Jones]: Today, January 12, 1982, we are transferring our stock in Trinity Loss Managers, Inc. to Unigard in accordance with the Agreement of Sale dated October 28, 1981. I have disagreed with the portions of the Agreement of Sale and the consideration to be received by me for my Trinity stock. I have no choice but to transfer my stock to Steve Conner and Unigard. Before doing so I am asking that you acknowledge the following by your signature to this letter: that all signatures on the Trinity Loss Managers, Inc. stock which are to be transferred to Unigard were signed January 8, 1982 or later although these are dated 1980. That the original stock issued was owned by me and Orville D. Jones. My ownership was 200 shares and Jones [sic] was 800 shares. That no agreement was made to transfer stock to Stephen Conner until after June 1981. That I requested changes in the Agreement of Sale to Unigard but none were made at my request. These requests regarded equal treatment under the contract. Areas of particular concern were paragraphs five and eight and the consideration to me. That I was requested to resign as a member of the Board of Directors and did so with the understanding that Orville Jones would be the only member of the Trinity Board of Directors. That the only meeting ever attended by me as a Director was the organizational meeting when the corporation was formed. That I was never involved in the discussions or preparation

---

3. The Agreement of Sale was signed on October 28, 1981.

of the Agreement of Sale contract with counsel representing the corporation. I am asking that you both acknowledge the foregoing by your signature to insure my continued employment since the Agreement of Sale makes it potentially profitable to you both if I am not employed at the time the contingency is fully earned.

Sincerely.

Mike Spangler.

We have acknowledged the letter to be accurate as to dates and statements made and as to concerns expressed and requests made by Spangler.

Both Jones and Conner signed under the acknowledgement.

The transfer of ownership in Trinity to Unigard occurred on January 12, 1982, and was effective as of January 1, 1982. Jones, Conner, and Spangler each had a five-year employment contract with Unigard as a result of the sale of Trinity to Unigard. Jones and Conner continued to work for Unigard until July 1, 1984. In 1984, Unigard shut down its operation in Dallas except for the claims, which Spangler continued to handle until 1986.

On October 28, 1985, Spangler sued Jones and Conner, alleging that Jones and Conner breached fiduciary duties owing to Spangler based upon the parties' relationship as co-venturers and stockholders in the same corporation. Spangler further alleged that Jones and Conner committed constructive fraud in connection with the sale of the corporation and breached an oral agency agreement among the parties.

Trial was before a jury. Spangler moved for a partial instructed verdict on the issue of partnership/joint venture based upon the fact that Jones and Conner had failed to file a sworn denial as to the existence of a partnership/joint venture.[4] The trial court ruled that failure to comply with rule 93 of the Texas Rules of Civil Procedure precluded the denial of the existence of a partnership/joint venture, but the trial court also determined that the parameters of the partnership were not definitively de-termined from the pleadings. Thus, the trial court determined that the parties would be allowed to go into whether certain activities were encompassed within the partnership/joint venture relationship. When Spangler rested, Jones and Conner moved for an instructed verdict as to each of Spangler's claims, asserting that they were barred by the two-year statute of limitations and by the theories of estoppel, waiver, and ratification. Conner additionally moved for an instructed verdict on the claim of breach of agency agreement because there was no pleading or evidence to support the claim as to him (Conner). The trial court instructed a verdict in favor of Conner on the ground that the two-year statute of limitations barred all of the claims asserted against him for breach of fiduciary duty and for constructive fraud and that, as a matter of law, he was not liable for any claim for breach of an agency relationship. Conner subsequently filed a motion to sever. The trial court granted Conner's motion and entered final judgment for Conner. The trial court instructed a verdict in favor of Jones on all claims against him with the exception of the claim for breach of an agency agreement between Jones and Spangler. The trial continued as to Spangler's claim against Jones for breach of the oral agency agreement. At the close of all of the evidence, Jones moved for an instructed verdict on the remaining claim against him, asserting limitations, waiver, ratification, and estoppel. The trial court granted an instructed verdict in favor of Jones on the ground that the claim for breach of any agency agreement was barred by the doctrine of ratification and entered judgment in favor of Jones. Subsequently, Spangler filed a motion for new trial which was overruled by written order.

■ In all of Spangler's points of error, he challenges the trial court's granting of an instructed verdict. When reviewing the propriety of an instructed verdict on appeal, this Court must keep in mind that, generally, an instructed verdict is proper

**4.** Texas Rule of Civil Procedure 93 requires that a pleading must be verified by affidavit if the pleading sets forth a denial of partnership. *See* Tex.R.Civ.P. 93.

when the opponent's pleadings are defective and insufficient to support a judgment, when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or when the evidence offered on a cause of action is insufficient to raise an issue of fact. *McCarley v. Hopkins,* 687 S.W.2d 510, 512 (Tex.App.—Houston [1st Dist.] 1985, no writ); *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 932–33 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). In reviewing the granting of an instructed verdict by the trial court on an evidentiary basis, the reviewing court will determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978). This court must consider all of the evidence in a light most favorable to the party against whom the verdict was instructed, disregard all contrary evidence and inferences, and give the losing party the benefit of all reasonable inferences arising therefrom. *Collora,* 574 S.W.2d at 68. Every reasonable meaning deducible from the evidence is to be indulged in the nonmovant's favor. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 931 (Tex.1983). If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper, and the issue must go to the jury. *White v. Southwestern Bell Tel. Co.,* 651 S.W.2d 260, 262 (Tex.1983); *Texas Employers Ins. Ass'n v. Page,* 553 S.W.2d 98, 102 (Tex. 1977). With these standards in mind, we will now address Spangler's points of error.

■ In his first point of error, Spangler asserts that the trial court erred in granting Jones's motion for instructed verdict based upon the doctrine of ratification. Spangler concedes that, as a general rule, the conduct of a party to a contract which operates as acceptance of its benefits *after* such party learns of fraud or other misconduct that would, under law, allow that party to refuse to consummate the transaction, operates as an estoppel to prevent the party from thereafter seeking to disaffirm the transaction. However, Spangler contends that Jones, as a prior joint venturer and disloyal agent of Spangler, is not free to adopt or receive the benefits of such an equitable rule in this case. Spangler maintains that by reason of his position as a partner/joint venturer with Jones and his oral agency agreement with Jones, he (Spangler) was the "principal" in a principal-agent relationship with Jones. Spangler argues, therefore, that by reason of Jones's conduct, Spangler was placed in a position of economic duress to such an extent that he was literally forced to consummate the agreement of sale wrongfully negotiated by Jones.

Jones contends that the trial court properly granted his motion for instructed verdict because the doctrine of ratification barred Spangler's claim for breach of an oral agency agreement. Jones argues that the record establishes that prior to the time Spangler signed the agreement of sale, he (Spangler) had seen draft proposals and knew the terms of the agreement of sale which he ultimately signed and agreed to. Further, Jones asserts that Spangler accepted every benefit that came to him as a result of the agreement of sale and that after signing the agreement of sale, Spangler sought and received additional rights and money to correct the perceived unequal treatment. Jones argues that, as a result, Spangler ratified the agreement of sale because his actions manifested his assent to confirm Jones's act. Jones maintains that the fact that Spangler signed the agreement with the intention of suing Jones and Conner later is of no moment because the mental intent or reservations of a party do not affect the determination of the question of ratification, *see Spellman v. American Universal Investment Co.,* 687 S.W.2d 27, 30 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.), as it is the knowledge of the party and his actions in light of that knowledge which are critical. *See Land Title Co. v. F.M. Stigler, Inc.,* 609 S.W.2d 754, 756 (Tex.1980). Jones further contends that Spangler was not subjected to economic duress because Spangler had no obligations or liabilities to Unigard at the time Spangler signed the agreement of sale. Jones maintains that on October 28, 1981, Spangler had not transferred any

Trinity stock to Conner under the prior agreement and that Spangler, therefore, still held 200 shares of Trinity stock. Moreover, Jones asserts that the assets of NIMI had been transferred to Trinity for no consideration, so Spangler was actually in a better position than before October 1981. Jones concludes that, as a matter of law, there was no duress because there was no threat to do some act which the party threatening had no legal right to do, there was no illegal exaction or some fraud or deception, and there was no imminent restraint such as to destroy free agency without present means of protection. *See Tower Contracting Co., Inc. v. Burden Bros., Inc.*, 482 S.W.2d 330, 335 (Tex.Civ. App.—Dallas 1972, writ ref'd n.r.e.).

▆▆▆ Ratification occurs when a person, induced by fraud to enter into an agreement, continues to accept benefits under that agreement after he becomes aware of the fraud or breach, or if he conducts himself so as to recognize the agreement as binding. *See Johnson v. Smith*, 697 S.W.2d 625, 630 (Tex.App.— Houston [14th Dist.] 1985, no writ) *citing Sawyer v. Pierce*, 580 S.W.2d 117, 122 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). The burden was on Jones to prove knowledge of the fraud or breach and to prove a voluntary, intentional choice to ratify the contract in light of that knowledge. *See Johnson*, 697 S.W.2d at 630. The key question is whether Spangler had *full knowledge* of the fraudulent acts or breach at the time of ratification. *See id.* If the acts of ratification are controverted, the question becomes one for the trier of fact. *Id.* at 630–31.

▆▆▆ Considering all of the evidence in a light most favorable to Spangler, the party against whom the verdict was instructed, disregarding all contrary evidence and inferences, and giving Spangler the benefit of all reasonable inferences arising therefrom, we hold that the trial court erred in granting Jones's motion for instructed verdict based upon the doctrine of ratification. Spangler testified that they entered into a verbal agreement as to the terms that should be incorporated into the sale of Trin-

ity to Unigard. Spangler testified that the benefits were to be distributed on a pro-rata basis, in accordance with the ownership percentages. Spangler and Conner testified that Jones represented them in the negotiations with Unigard. Spangler testified that the actual contract of sale, which was negotiated by Jones, was different from the oral agreement entered into by Spangler, Jones, and Conner. Rather than equal pro-rata distribution of the benefits from the sale of stock in strict accordance with the ownership percentages orally agreed upon by the parties, the terms of the agreement of sale were such that Spangler was not treated as an equal 5% owner with regard to consideration paid to each shareholder. In addition, the agreement of sale created conditions precedent to Spangler's benefits, and the conditions precedent did not apply to Jones and Conner.

Spangler also testified that both Jones and Conner told Spangler that the deal with Unigard was already struck and that Unigard would not agree to any changes whatsoever in the terms of the agreement of sale. Spangler testified that they stated that it was an "all or nothing deal." Spangler stated that, faced with the unfair economic duress caused by the conduct of Jones in violating the shareholders' agreement regarding the transaction, Spangler elected to consent to the agreement of sale. Moreover, Spangler continued to oppose the agreement of sale as evidenced by his January 12, 1982 letter to Jones and Conner. Spangler stated that beginning in July 1984, he gained access to documentation which led Spangler to believe that Jones and Conner had misrepresented Unigard's willingness to alter the terms of the sale of Trinity to Unigard. He discovered drafts of the Agreement of Sale and drafts of the contract of sale of the stock which indicate that Jones was altering the drafts to his benefit, at Spangler's expense, *e.g.,* Jones made a notation on one draft of the agreement stating "Spangler's portion to be available to Jones and Conner."

Unlike *Tower Contracting*, we conclude that the foregoing evidence regarding ratification is controverted. In *Tower Con-*

*tracting,* this Court concluded that no question of fact existed because the party accused of the fraudulent act had a legal right to act as he did. Here, Spangler, Jones, and Conner each owned a percentage of Trinity. Both Conner and Spangler testified that Jones represented them in the negotiations to sell Trinity to Unigard. It is undisputed that Jones received more favorable terms in the contract with Unigard and that Spangler received less favorable benefits in the contract with Unigard than originally anticipated in the oral agreement among the three shareholders, as described by Spangler. Spangler testified that Jones and Conner told him that it was an "all or nothing deal" but that he later discovered drafts of the sale which included more favorable terms than the terms presented to him upon finalizing the transaction. Because the existence of ratification is a question for the trier of fact, *see Johnson,* 697 S.W.2d at 630–31, we hold that the trial court erred in granting Jones an instructed verdict as to ratification. Accordingly, we sustain Spangler's first point of error.

■ In his second point of error, Spangler asserts that the trial court erred in granting Jones's motion for instructed verdict based upon the statute of limitations as to Spangler's claims for "equitable restitution" damages resulting from Jones's breach of fiduciary duty. The trial court, in its judgment, stated that the two-year, not the four-year, statute of limitations applied; therefore, the trial court held that Spangler's cause of action for breach of fiduciary duty was barred. Spangler maintains that limitations is not applicable to equitable claims and even if any limitations period does apply, it is section 16.004(c) of the Texas Civil Practice and Remedies Code. Section 16.004(c) provides as follows:

> (c) A person must bring suit against his partner for a settlement of partnership accounts, and must bring an action on an open or stated account, or on a mutual and current account concerning the trade of merchandise between merchants or their agents or factors, not later than four years after the day that the cause of action accrues. For purposes of this

subsection, the cause of action accrues on the day that the dealings in which the parties were interested together cease. TEX.CIV.PRAC. & REM.CODE ANN. § 16.004(c) (Vernon 1986). Jones argues that Spangler's contentions are without merit because he did not seek equitable relief or a partnership accounting to which section 16.004(c) applies.

We agree with Jones that Spangler has sought money damages, not equitable relief, to which limitations, rather than laches, would apply. Furthermore, we cannot agree that section 16.004(c) is applicable in this instance. The statute clearly contemplates a cause of action "on an open or stated account, or on a mutual and current account." *Id.* Here, Spangler asserts that his cause of action for breach of fiduciary duty arises out of Jones's failure to fairly and equally negotiate the terms of the sale to Unigard. No account is involved or even remotely related to Spangler's cause of action for Jones's breach of fiduciary duty. *See Zapffe v. McElroy,* 364 S.W.2d 299, 301 (Tex.Civ.App.—Dallas 1963, no writ). Thus, we conclude that section 16.004(c) of the Texas Civil Practice and Remedies Code is inapplicable in this instance.

■ Jones concedes that a claim of breach of fiduciary duty subsumes a claim of constructive fraud. Inasmuch as there is no limitations statute expressly to "fraud," "deceit," "misrepresentation," or any similar term, we conclude that the general limitations provision of the Texas Civil Practice and Remedies Code providing that for all actions for which there is no "express limitations period," the statute of limitations is four years is applicable. *Williams v. Khalaf,* 33 TEX.SUP.CT.J. 133, 137 (November 28, 1990) (opinion on mot. reh'g), *citing* TEX.CIV.PRAC. & REM.CODE ANN. § 16.051 (Vernon 1986). Accordingly, we sustain Spangler's second point of error.

■ In his third point of error, Spangler asserts that the trial court erred in failing to grant his motion for instructed verdict on the existence of a partnership/joint venture between the parties and

in allowing Jones to present evidence as to the existence of a partnership/joint venture when Jones had failed to comply with Texas Rule of Civil Procedure 93. Spangler maintains that the failure to file a sworn pleading denying the existence of a partnership/joint venture relationship alleged by a pleading of a party operates, in Texas, against the defaulting party as an admission of the existence of the partnership/joint venture, and such admitted fact "cannot properly be contradicted at trial." *Coulson v. Alvis Auto Rentals, Inc.*, 352 S.W.2d 849, 849–50 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n.r.e.). As a result of the trial court's erroneous ruling, Spangler claims that Jones was granted the right to defend the case based upon his claim that he never had any "partnership" with Spangler and that the transaction was conducted at "arms length" between Spangler and Jones for purposes of remedy and computation of limitations.

We note that, contrary to Spangler's assertion, the trial court ruled that failure to comply with rule 93 of the Texas Rules of Civil Procedure precluded the denial of the *existence* of a partnership/joint venture. Moreover, inasmuch as we have found that section 16.004(c) is not applicable, but have, nevertheless, held that the applicable limitations period is four years, *see Williams*, 33 Tex.Sup.Ct.J. at 356, and have reversed, in part, on the trial court's erroneous application of a two-year limitations period, we conclude that error, if any, would be harmless error. Consequently, we overrule Spangler's third point of error.

Because of our disposition of this appeal, we overrule appellee's cross-point seeking delay damages pursuant to rule 84 of the Texas Rules of Appellate Procedure. Accordingly, we reverse the trial court's judgment and remand for a new trial.