Charles D. BROWDER, Jr., Appellant,

v.

H.V. EICHER, Jr., and Universal Petroleum Corporation, Appellees.

No. C14-91-00522-CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 5, 1992.

Rehearing Denied Dec. 3, 1992.

---

Melvin L. Smith, Houston, for appellant.

Douglas A. Sandvig, Houston, for appellees.

Before JUNELL, ROBERTSON and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

Charles D. Browder, Jr. appeals from an adverse judgment in his suit against appellees for breach of contract, fraud, and unjust enrichment. Appellant brings 40 points of error challenging the trial court's implied findings that there was no breach of contract and no fraud, and the trial court's express findings of no intent to commit fraud and that appellees explained certain unsubstantiated charges. We reverse.

Appellant and several other individuals, not parties to this appeal, were the non-operating working interest owners, pursuant to a Joint Operating Agreement, in an oil and gas lease, called the E.C. Hankamer lease. Appellee, Universal Petroleum Corporation, was the operator of this lease. Appellee, H.V. Eicher, owns Universal and is its President and sole employee. The Hankamer lease had two wells on it. One well was a producing well and the other was a saltwater injection well.

In February 1987, Eicher wrote the non-operating working interest owners, including appellant, a letter regarding the Hankamer lease. In this letter, Eicher stated that oil production had declined from 23 to 16 barrels per day. To produce more fluid, Eicher suggested converting from the rod pump to a gas lift system. Eicher stated that he had reached a tentative agreement with Sue–Ann Oil Company, which had a nearby lease, to obtain gas for the Hankamer gas lift system in exchange for the disposal of approximately 700 barrels of water a day from the Sue–Ann lease. Eicher estimated the cost of conversion to be approximately $18,000.00, but that increased production should pay for the conversion in approximately 90 days.

At the time of this letter, Eicher had an agreement with one, but not all, of the owners of Sue–Ann Oil Company to purchase its lease. Eicher later obtained full approval and paid Sue–Ann $9,000.00 for their lease and equipment. Sue–Ann reserved a 10% overriding interest. Thus, Universal now owned this lease, subject to Sue–Ann's interest. Eicher admitted that he never told the working interest owners of this purchase. The Sue–Ann/Universal well began pumping 500–600 barrels of salt water per day into the Hankamer salt water disposal well. The working interest owners were paid for the gas used to dispose of this water and for the gas used to run the compressor, but they were not paid for the disposal of this water.

Appellee, Browder, and three other parties to the Operating Agreement filed suit against Eicher and Universal alleging breach of contract, fraud and deceit, breach of the duty of good faith and fair dealing, breach of fiduciary duty, quantum meruit and unjust enrichment, and violations of the DTPA. Appellant also sought a permanent injunction to stop Universal from acting as the operator of the Hankamer lease and to order Universal to turn over all records to the newly designated operator. Following a bench trial, the court entered judgment in favor of Eicher and Universal. In its Findings of Fact and Conclusions of Law, the trial court made the following findings: (1) that Eicher and Universal were not in a fiduciary relationship with appellant, (2) that Eicher and Universal did

not intend to deceive appellant in sending the February 17, 1987 letter, (3) that appellant was not a consumer under the DTPA; (4) that appellant was not entitled to injunctive relief; (5) that the conversion to a gas lift system increased production in the Hankamer well; (6) that plaintiffs were entitled to certain credits in accordance with audit findings; (7) that Eicher and Universal sufficiently explained expenditures of $31,543.26 identified in the April 9, 1989 audit; and (8) that plaintiffs failed to carry their burden of proving damages resulting from the conduct of Eicher and Universal.

In points of error one through eighteen, appellant challenges the legal sufficiency of the trial court's finding that appellant did not prove damages and challenges the legal and factual sufficiency of the trial court's implied finding that Eicher and Universal did not commit fraud. In points of error 19 through 21, appellant challenges the trial court's finding that appellees did not intend to deceive appellant.

■ Before analyzing these points, we note that two of these points inappropriately seek a review of the factual sufficiency of conclusions of law. In point of error eleven, appellant claims that the trial court's implied finding of no intent is against the great weight and preponderance of the evidence. In point of error twenty, appellant contends that the trial court's express finding of no intent is against the great weight and preponderance of the evidence. While one may attack the legal sufficiency of a conclusion of law, one may not challenge the factual sufficiency of the conclusion because conclusions of law must be attacked as erroneous as a matter of law. *See Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Although the finding of no intent to deceive appellant is not designated as either a finding of fact or a conclusion of law, it is a conclusion of law. *Cf. Houston v. Harris County Outdoor Advertising Ass'n*, 732 S.W.2d 42, 47 (Tex.App.—Houston [14th Dist.] 1987, no writ). Because we may not review the factual sufficiency of a

conclusion of law, we overrule points eleven and twenty, and we turn to appellant's other points.

■ Where a party attacks the legal sufficiency of an adverse finding on an issue on which he had the burden of proof, "he must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue." *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). We must first examine the record for evidence supporting the finding while ignoring all evidence to the contrary. *Id.* at 690. If no evidence supports the finding, we must then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

■ Appellant also attacks the factual sufficiency of the evidence. Where a party challenges an issue upon which he had the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied). In reviewing such a challenge, the appellate court must examine the record to determine if there is some evidence to support the finding, that the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or that the great preponderance of the evidence supports its nonexistence. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Whether this challenge is to a finding or a non-finding, an appellate court may reverse and remand a case for a new trial when it concludes the finding or non-finding is against the great weight and preponderance of the evidence. *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 651 (Tex.1988).

To prove fraud, appellant had to show by a preponderance of the evidence that:

(1) a material representation was made;

(2) the representation was false;

(3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion;

(4) the speaker made the representation with the intent that it should be acted upon by the party;

(5) the party acted in reliance upon the representation; and

(6) the party thereby suffered injury.

*Eagle Prop., Ltd. v. Scharbauer,* 807 S.W.2d 714, 723 (Tex.1990). In *Johnson v. Smith,* 697 S.W.2d 625 (Tex.App.—Houston [14th Dist.] 1985, no writ), a panel of this court held jury findings that the defendant made false representations, knowing they were false when made, and that the representations induced action were equivalent to a finding the defendant intended to deceive. *Id.* at 633 (citing *Dowling v. NADW Marketing, Inc.,* 631 S.W.2d 726, 727 (Tex.1982)).

In its Findings of Fact and Conclusions of Law, the trial court found that Eicher and Universal did not intend to deceive appellant in sending the letter dated February 17, 1987. If there is sufficient evidence to support this finding, then we must uphold the trial court's judgment as to the claim of fraud.

Appellant contends that Eicher admitted he made false representations in the February 17, 1987 letter and that the evidence clearly establishes that these representations were intended to induce appellant to approve the conversion to a gas lift system. Our review of the evidence shows that Eicher made certain representations in the letter regarding declining production, a tentative agreement with Sue–Ann Oil Company to swap water for gas, the approximate cost of conversion to gas lift, and the estimated increase in production under a gas lift system. As to the decreasing production before conversion, Eicher testified that he thought this was true at the time he wrote the letter. Eicher admitted that he now realizes production had not decreased as much as stated in the letter, and in fact, production had apparently increased in the six months preceding the letter.

In the February 17, 1987 letter, Eicher estimated the cost of conversion at approximately $18,000.00. Browder testified that he thought the actual cost of conversion came to approximately $45,000.00. We locate no evidence that Eicher knew that his estimate of conversion costs was false.

■ At the time Eicher wrote the letter, he testified that he had an agreement with Doug Gayle of Sue–Ann Oil Company to buy the Sue–Ann lease. Eicher testified that he did not mention this deal to the non-operating working interest owners because the deal was not consummated at that time. The Lease Assignment involving the Sue–Ann lease was executed, however, on the same date that Eicher wrote the letter to the non-operating working interest owners regarding the tentative agreement with Sue–Ann to swap gas for water. Eicher admitted that there was no tentative agreement regarding a swap of gas for water at the time he wrote the letter. Eicher testified that he knew Universal, and not Sue–Ann, would be disposing salt water into the Hankamer salt water disposal well, but he did not think it mattered what entity was disposing of the water. Thus, the representation about a swap of gas for water disposal was false and made with knowledge of its falsity. Because the purpose of the letter was to induce the non-operating working interest owners to approve the conversion to a gas lift system and Eicher knowingly made false representations in this letter, we hold that no evidence supports the trial court's finding of a lack of intent. We sustain point of error nineteen. Having sustained this point we need not discuss the other points of error challenging the trial court's implied findings regarding fraud.

■ The trial court made the additional finding that appellant failed to carry his burden of proof regarding damages. We disagree. Appellant testified that he relied on Eicher's representations in approving the conversion. There was also evidence of the actual cost of conversion and of the amounts of royalties paid for salt water disposal.

Appellant's expert witness regarding costs, John L. Wilson, testified that although production increased under the gas lift system, the conversion and operation costs of the new system resulted in a loss of approximately $71,290.00. To arrive at

this sum, the expert compared the income actually received during the years under the gas lift system less operation costs to a forecast of net income had pumping unit operations continued. On cross-examination, however, this expert agreed that he had compared three years of operations under the gas lift system with four years of operations under the original pumping system. If the calculations had included a comparison of three years on each system, the expert admitted that the loss would decrease to $26,324.20. The expert testified that his calculations included $12,-000.00 per year for annual operating costs under the rod pump system. If the expert had used the amount of operating costs under the rod pump according to Eicher, which was approximately $22,000.00 per year, the calculations would show no losses under the gas lift system. The expert added, however, that $22,000.00 per year was in his opinion an unreasonably high figure for operating a rod pump system.

As to the disposal of salt water, Browder testified that documentation from the Railroad Commission indicated the Hankamer Lease took on approximately 600 barrels per day of salt water from the Sue–Ann well over a 34–month period. Browder also testified about Universal's agreement with another company, Solatex, for the disposal of salt water into the disposal well on the Hankamer lease. Under this agreement, Universal received $.20 per barrel for the first 100 barrels, $.15 per barrel for the next 200 barrels, and $.10 per barrel for the remaining barrels of salt water. Using these figures, Browder determined that the salt water disposal rentals for the disposal of water from the Sue–Ann well over 34 months came to $81,600.00. Because the plaintiffs' interest was 78.5%, Browder multiplied the total by .785, resulting in $64,056.00 in lost rentals for salt water disposal. Browder also made these calculations for an average of 650 barrels of water per day, resulting in lost rentals of $68,059.50, and for an average of 700 barrels per day, resulting in lost rentals of $72,063.00.

We hold that appellant presented sufficient evidence of damages. Thus, the trial court erred in finding that appellant had not carried its burden of proof regarding damages. We sustain point of error seven. Having found no evidence supporting the trial court's findings of no intent to commit fraud and no proof of damages, we need not address appellant's other points of error.

We reverse the judgment and remand the cause for further proceedings in accordance with this opinion.