Opinion issued February 16, 2007


 

 










In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00267-CV






LANG VAN HUYNH AND SONNY K. HUYNH, Appellants


V.


THO THI PHUNG, Appellee







On Appeal from County Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 752102


 




MEMORANDUM OPINION

 Appellants, Lang Van Huynh ("Lang") and Sonny Van Huynh ("Sonny")
(together "the Huynhs"), appeal from a judgment for fraud and breach of contract in
favor of appellee, Tho Thi Phung ("Tho"). We determine whether the trial court erred
because (1) the evidence is legally insufficient to support fraud; (2) the award of
actual damages was improper; and (3) the award of exemplary damages violated
constitutional due process or was factually insufficient. We modify the judgment to
reduce the amount awarded to $20,000 in actual damages against the Huynhs, jointly
and severally, and affirm the judgment as so modified, conditioned on a remittitur of
$100,000 of the $200,000 exemplary damages awarded against each of the Huynhs. 
In the event that a remittitur is not filed with the Clerk of this Court within 20 days
from the date of this opinion, we will reverse the judgment and remand the case to the
trial court for a new trial. 


Background


 Tho sued to recover damages against the Huynhs for breach of contract and
fraud, alleging that she had entered into an agreement with the Huynhs to invest
$20,000 in the Huynhs' business in exchange for repayment of the loan and a
percentage of profits. The Huynhs pleaded novation as an affirmative defense,
claiming that they were not liable to Tho because she had substituted the debt that
was the subject of her cause of action for a promissory note executed by a third party.

 The evidence at trial showed that in either November or December of 1996, the
Huynhs asked Tho to invest $100,000 in a shrimping dock business ("the business"). 
The Huynhs told Tho that once they had enough capital, they would purchase the
business for $800,000 and then re-sell it within three months for $1,000,000.

 Tho agreed to invest $20,000 on the condition that, within approximately three
months, she would receive her initial investment back plus 10% of the projected
$200,000 profit. After the three months had passed, Tho requested repayment from
the Huynhs several times, but was denied. On or around June 1, 1997, Lang signed
a $20,000 check ("the check") in repayment of Tho's initial investment, but that
check was not paid by the bank because of insufficient funds. At the time of the trial,
Tho neither had been repaid the $20,000 investment, nor had she received the money
from the expected proceeds of the sale.

 At trial, the Huynhs characterized the money exchange as a loan to another
person, not an investment in their business. Specifically, the Huynhs claimed that
Tho loaned money to Thomas Nguyen and that Lang was merely a guarantor. As
evidence of this, the Huynhs introduced a promissory note that had handwritten
comments in Vietnamese at the bottom. They claimed that this note, along with the
additional comments, released Lang from the loan and therefore constituted a
novation. However, Tho introduced the original note, which did not contain the
additional handwriting at the bottom.

 The jury found in favor of Tho on the breach-of-contract and fraud causes of
action. The jury awarded out-of-pocket damages in the amount of $20,000, benefit-of-the-bargain damages in the amount of $20,000, and exemplary damages of
$2,500,000. Tho elected to recover for fraud, instead of breach of contract, and
voluntarily remitted exemplary damages to $200,000 per defendant, pursuant the
statutory exemplary-damages cap. See Tex. Civ. Prac. & Rem. Code Ann. § 41.008
(Vernon 2002).

 In the trial court's initial judgment, it awarded $20,000 in actual damages and
$4,732.98 in interest against the Huynhs, jointly and severally, and $200,000 in
exemplary damages against Sonny and Lang individually. Then, in its first amended
judgment, the trial court awarded $20,000 in actual damages and $2,394.52 in
interest, reducing interest to five percent. The exemplary-damages award remained
the same.

 Tho filed a motion to disregard the jury findings and to modify the judgment,
stating that the "jury misunderstood the questions and mistakenly entered an amount
less than intended" and that the "jury misguidedly took Plaintiff's counsel's
suggestions literally." In a second amended judgment, the trial court awarded
$40,000 in actual damages and $5,090.41 in interest against the Huynhs, jointly and
severally, and $200,000 in exemplary damages against Sonny and Lang individually.Legal-Sufficiency Challenge

 In points of error one and two, the Huynhs allege that the trial court erred
because there is no evidence to support the jury's liability finding on fraud and breach
of contract. 

A. Standard of Review and Law

 A legal-sufficiency point must be sustained (1) when there is a complete
absence of a vital fact; (2) when rules of law or evidence preclude according weight
to the only evidence offered to prove a vital fact; (3) when the evidence offered to
prove a vital fact is no more than a scintilla; or (4) when the evidence conclusively
establishes the opposite of the vital fact. Merrell Dow Pharm., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997). Legal-sufficiency review in the proper light must
credit favorable evidence if reasonable jurors could and disregard contrary evidence
unless reasonable jurors could not. City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005). If the evidence would enable reasonable and fair-minded persons to
differ in their conclusions, then jurors must be allowed to do so. Id. at 822. A
reviewing court cannot substitute its judgment for that of the trier of fact, so long as
the evidence falls within this zone of reasonable disagreement. Id. Although the
reviewing court must "consider evidence in the light most favorable to the verdict and
indulge every reasonable inference that would support it[,] . . . if the evidence allows
of only one inference, neither jurors nor the reviewing court may disregard it." Id. 
 Fraud must be proved at trial by a preponderance of the evidence. Browder v.
Eicher, 841 S.W.2d 500, 502 (Tex. App.--Houston [14th Dist.] 1992, writ denied);
see Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon 2003); Sparks v.
Dawson, 47 Tex. 138 (1877); Frankfurt v. Wilson, 353 S.W.2d 490, 496 (Tex. Civ.
App. Dallas 1961, no writ). (1) The following elements are required to prove fraud: (1)
a material misrepresentation was made; (2) the misrepresentation was either known
to be false when made or was asserted without knowledge of its truth; (3) the
misrepresentation was intended to be acted upon; (4) the misrepresentation was relied
upon; and (5) the misrepresentation caused injury. Dow Chem. Co. v. Francis, 46
S.W.3d 237, 242 (Tex. 2001). 

 A party to a contract has a duty to abstain from inducing another to enter the
contract through the use of fraudulent misrepresentations. Haase v. Glazner, 62
S.W.3d 795, 798 (Tex. 2001). A promise to do an act in the future is actionable fraud
when made with the intention, design, and purpose of deceiving and with no intention
of performing the act. Formosa Plastics Corp. v. Presidio Eng'rs & Contractors,
Inc., 960 S.W.2d 41, 46 (Tex. 1998). Thus, to prove fraud in the inducement, a
plaintiff must present evidence that is "relevant to [the defendant's] intent at the time
the representation was made." Id. at 48. Failure to perform, standing alone, is not
evidence of intent not to perform when the promise was made. Spoljaric v. Percival
Tours, Inc., 708 S.W.2d 432, 435 (Tex. 1986). That fact, however, is a circumstance
to be considered with other facts to establish intent. Id. Because intent to defraud is
usually not susceptible to direct proof, it may be proven by circumstantial evidence. 
Id. Slight circumstantial evidence of fraud, when considered with the breach of
promise to perform, is sufficient to support a finding of fraudulent intent. Id.


B. Fraud

 1. No Evidence of Lang's Intent to Perform (2)

 In point of error one, Lang argues that "[b]ecause the only representation
alleged and proved was the intent to repay a loan in the future, there is no evidence
of fraud." Specifically, Lang argues that "[t]here is no evidence that [Lang] did not
intend to perform at the time the promise was made." 

 Viewed in a light favorable to the judgment, the evidence showed that the
Huynhs represented to Tho that they would repay the $20,000 investment and 10
percent of the profit made from selling the business within approximately three
months. They did not repay Tho the initial $20,000 within the time promised, and
they did not pay Tho $20,000 in proceeds from the sale of the business because no
such sale occurred. When Lang gave a check to Tho in repayment of Tho's $20,000
initial investment with the Huynhs, the check was returned for insufficient funds. 
Although Lang contends that the check was merely collateral, and not repayment for
an investment with Tho, Lang nonetheless testified to the jury he did not have the
money in the account when he wrote the check. 

 In addition, Lang contended that in a meeting on July 4, 1997, Tho agreed to
shift liability from Lang to Thomas. Lang testified that David Nguyen, Tho's son,
prepared a promissory note to reflect the novation of the security agreement. Thomas
testified that he added a notation to the promissory note at the request of Lang and
Tho because Lang could not read English. Lang introduced into evidence a
promissory note that included a notation that stated in Vietnamese, "This loan of
$20,000 since April 7th, 1997 was the amount indicated in the check 225. Signed on
[the] 1st, the month of June 1997 under the name of [Lang], Houston, Texas, April
7, 1997." At trial, Tho introduced the original note that did not contain the additional
notation. The jury made a specific finding that the promissory note was altered "with
intent to defraud or harm another." Tho, David, and Anna Luu, manager of Tho's
restaurant at that time, testified that the loan to Thomas was a separate transaction
that did not involve Lang. (3) In support of this theory, Thomas admitted that neither
he nor his wife had made the interest payments to Tho. Because slight circumstantial
evidence of fraud in combination with Lang's failure to perform is sufficient to
support a finding of fraudulent intent, we hold, after viewing the evidence in the light
most favorable to the judgment, that the above evidence is more than a scintilla of
evidence that Lang did not intend to perform at the time that the promise was made. 

 Because the Huynhs raise no further challenges to the jury's fraud finding
against Lang, we further hold that the evidence was legally sufficient to show that
Lang committed fraud. (4)

 We overrule point of error one.

 2. No Evidence of Sonny's Misrepresentation

 In point of error two, Sonny argues that "[b]ecause there is no evidence that
[Sonny] made a fraudulent promise or entered into a contract, he should not be
included in the judgment." Specifically, Sonny argues that he did not make a material
misrepresentation on which Tho relied and that he was not a party to the contract.

 Tho and David testified that both Sonny and Lang solicited money from her
and that both made requests to borrow money. Tho testified as follows:


 [The Huynhs' Attorney]: Did [Sonny] ever indicate that he
wanted a loan from you?


 [Tho]: Always father and son together.

 . . .

 [The Huynhs' Attorney]: Did [Sonny] borrow $20,000 or
did [Lang]?


 [Tho]: [Lang] and [Sonny]. The two
together.


 [The Huynhs' Attorney]: What did Sonny say to [Tho]
that indicated that he wanted to
borrow money?


 [Tho]: He said that he wanted to buy
the dock but didn't have enough
money.


 Viewed in the required light, the evidence further showed that the Huynhs
came to Tho's restaurant and told her that they were co-owners of the business. They
approached her together about borrowing $100,000 to buy a business. In December
1996, Tho invested $20,000 in the Huynhs' business. Tho and David visited the
shrimping dock, where they met with both Sonny and Lang. Sonny asked Tho for
more time so that he and Lang could sell the business. Tho and David again visited
the business in June 1997, at which time Sonny gave a check to Lang, who signed the
check to Tho. The named account owners on the check are listed as "Lang Van
Huynh or Sonny K. Huynh." At the time the check was written, Sonny and Lang told
Tho that the money was in the account. Tho also testified: 


 

 [The Huynhs' Attorney]: What exactly did [Sonny] say to
[Tho] that made her think that he
borrowed money from her?


 [Tho]: He said that [Lang] and he [sic]
in the same corporation, and that
they have equal authority.

 We hold that there was more than a scintilla of evidence that Sonny made a
material misrepresentation on which Tho relied. Because the Huynhs raise no more
challenges to the fraud finding against Sonny, we further hold that the evidence was
legally sufficient to support the fraud finding against Sonny. 

 Because we hold that there was legally sufficient evidence to support findings
of fraud against the Huynhs, we do not address their challenges under point of error
two regarding the finding that Sonny breached the contract.

 We overrule point of error two.

 Actual Damages


 The jury awarded $20,000 in out-of-pocket damages and $20,000 in benefit-of-the-bargain damages to Tho on the fraud cause of action. (5) The trial court
originally rendered judgment for $20,000 in total actual damages, reciting in its first
two judgments that out-of-pocket and benefit-of-the-bargain damages were
alternative measures of damages for fraud and that Tho thus could be awarded only
one of them, or $20,000 total. However, in its third and final judgment, rendered
upon Tho's motion to disregard the jury verdict on actual damages for fraud, the trial
court awarded Tho $40,000 in actual damages. In a separate, but contemporaneous,
order on Tho's motion to disregard the referenced jury finding, the trial court recited
that Tho was entitled "to recover $40,000 as actual damages, which is composed of
$20,000 for the return of her capital and $20,000 for gross profits she was promised."

 In point of error three, the Huynhs argue that "the actual damages in the
judgment should be reduced from $40,000 to $20,000." The Huynhs raise four
arguments in support. First, they argue that the trial court's judgment impermissibly
awarded Tho a double recovery of both out-of-pocket and benefit-of-the-bargain
damages for fraud. Second, and alternatively, the Huynhs argue that, even if the jury
correctly awarded Tho $20,000 as benefit-of-the-bargain damages based on her
testimony that the parties' contract called for her to recover her $20,000 investment
in the business, the jury could not have found an additional $20,000 in benefit-of-the-bargain damages for lost profits from the business's sale because no such sale took
place. Third, and alternatively, the Huynhs argue that the jury could not have found
the additional $20,000 in benefit-of-the-bargain damages for lost profits from the
business's sale because Tho's testimony of lost profits was speculative and thus
incompetent. Fourth, the Huynhs argue that Tho was estopped from asking the court
to disregard the jury's actual-damages award for fraud because her counsel told the
jury, in closing argument, to award $20,000 for out-of-pocket damages and $20,000
for benefit-of-the-bargain damages for fraud and for breach of contract.


A. Standard of Review

 "A trial court may disregard a jury finding only if it is unsupported by evidence
. . . or if the issue is immaterial." Spencer v. Eagle Star Ins. Co. of Am., 876 S.W.2d
154, 157 (Tex. 1994); see Tex. R. Civ. P. 301. Accordingly, a trial court may not
disregard a jury finding "that has some support in the evidence, even though the great
weight and preponderance of the evidence may be to the contrary." Harris County
v. McFerren, 788 S.W.2d 76, 78 (Tex. App.--Houston [1st Dist.] 1990, writ denied). 
Likewise, "[a] trial court may not properly disregard a jury's negative finding and
substitute its own affirmative finding unless the evidence conclusively establishes
such an affirmative finding." Id. 

 "A contention on appeal that an answer to a jury question should not have been
disregarded presents a 'no evidence' point." Id. Therefore, "[t]o sustain the trial
court's action in granting a motion to disregard the jury's answer to a specific
question, an appeals court must determine that there is no evidence upon which the
jury could have made the finding." Id. In making this determination, "all evidence
must be considered in the light most favorable to the party against whom the motion
is sought, and every reasonable inference deducible from the evidence is to be
indulged in that party's favor." Id. 


B. Lost Profits

 1. The Law

 "Texas recognizes two measures of direct damages for common-law fraud: the
out-of-pocket measure and the benefit-of-the-bargain measure." Formosa Plastics
Corp. USA, 960 S.W.2d at 49. "The out-of-pocket measure computes the difference
between the value paid and the value received, while the benefit-of-the-bargain
measure computes the difference between the value as represented and the value
received." Id. "Under the benefit-of-the bargain measure, lost profits on the bargain
may be recovered if such damages are proved with reasonable certainty." Id.

 Although "a benefit-of-the-bargain measure [of damages] can include lost
profits, it only compensates for the profits that would have been made if the bargain
had been performed as promised." Id. "[D]etermining whether lost profits have been
proved with reasonable certainty is a fact-intensive determination dependent upon the
circumstances of a particular case." Id., 960 S.W.2d at 50 n.3. The bottom line,
however, is that "[w]hen a review of the surrounding circumstances establishes that
the profits are not reasonably certain, there is no evidence to support the lost profits
award." Id. For example, although "'[i]t is not necessary that profits should be
susceptible of exact calculation,'" anticipated profits nonetheless "'cannot be
recovered where they are dependent upon uncertain and changing conditions, such
as market fluctuations, or the chances of business, or where there is no evidence from
which they may be intelligently estimated.'" Tex. Instruments, Inc. v. Teletron Energy
Mgmt., Inc., 877 S.W.2d 276, 279 (Tex. 1994) (quoting SW. Battery Corp. v. Owen,
115 S.W.2d 1097, 1098-99 (Tex. 1938)) (emphasis added).

 Profits which are largely speculative, as from an activity
dependent on uncertain or changing market conditions, or
on chancy business opportunities, or on promotion of
untested products or entry into unknown or unviable
markets, or on the success of a new and unproven
enterprise, cannot be recovered. Factors like these and
others which make a business venture risky in prospect
preclude recovery of lost profits in retrospect.

Id. (emphasis added).

 2. The Evidence

 Tho's lost-profits evidence, viewed in the appropriate light, was as follows. 
The Huynhs approached Tho for an investment of $100,000 to buy a shrimping dock
business for $800,000, which the Huynhs then wished to sell quickly for a profit. Tho
instead invested only $20,000, with the understanding that she would get back that
capital investment plus 10% of the profit from the business's sale. The Huynhs also
told Tho that they anticipated selling the business within three months for $1,000,000.
The record is unclear about whether the Huynhs told Tho that they actually had a
buyer ready to purchase for $1,000,000 in three months or whether they only
anticipated finding a buyer. For example, David testified that Lang "have [sic] a
buyer that he could sell the business after three months" and that "he have [sic] a
seller [sic] to sell the business," but he also testified that Lang "can have a buyer that
he can sell it [sic] for one million dollars" and that "he want [sic] to sell the business
for one million dollars. (Emphasis added.) Tho also testified that Lang "said the
quickest time [to sell] would be three months." Viewing this unclear testimony in the
light most favorable to the jury's finding awarding only Tho's capital investment of
$20,000, we must conclude that Lang meant only that he anticipated finding such a
buyer, not that he already had one.

 Some time after the three months had expired without repayment to Tho, she
and David visited the dock and saw the Huynhs working there. The Huynhs told
them at that time that they had to wait for the sale to occur because business was slow
in the wintertime. Tho and David did not know if the business was ever sold or listed
for sale, whether the business was owned or leased by the Huynhs, or whether the
business was a corporation or individually owned.

 We hold that this evidence is too speculative to prove lost profits from the sale
of the Huynhs' business. Tho based her estimate of $20,000 in lost profits only on
the Huynhs' estimate that they anticipated selling the business for $1,000,000. Tho
provided no evidence of how much the Huynhs actually invested in the business; of
anything more specific about the operations of this new business than that the Huynhs
bought a dock in Kemah, Texas, where they purchased shrimp wholesale; of how
profitable this new business would actually be; or of a fair-market value for such a
shrimping and dock business at that time and location. The Huynhs concede on
appeal that there is legally sufficient evidence to support the jury's finding on benefit-of-the-bargain damages because of the testimony that the Huynhs agreed to repay Tho
her initial investment after they had sold the business. See McFerren, 788 S.W.2d
at 78 (indicating that trial court may not disregard jury finding with some evidentiary
support). There is no competent evidence, however, of the profits that Tho would
have received from the sale of the Huynhs' business. Accordingly, we further hold
that the trial court erred in disregarding the jury verdict on the basis that Tho had
allegedly conclusively proved an additional $20,000 in lost profits as benefit-of-the-bargain damages. See id. (indicating that trial court may not disregard jury's negative
finding and substitute court's own affirmative finding unless evidence conclusively
establishes such affirmative finding).

C. Double Recovery

 Neither can the trial court's disregard of the jury's actual-damages finding for
fraud be supported by awarding Tho both out-of-pocket and benefit-of-the-bargain
damages, for a total of $40,000. "A plaintiff may recover either the out of pocket or
the benefit of the bargain damages, whichever is greater." Latham v. Castillo, 972
S.W.2d 66, 70 (Tex. 1998). These damages are alternatives: a plaintiff may not
recover both. Nelson v. Najm, 127 S.W.3d 170, 176 (Tex. App.--Houston [1st Dist.]
2003, pet. denied); Foley v. Parlier, 68 S.W.3d 870, 885 (Tex. App.--Fort Worth
2002, no pet.). Accordingly, the trial court's judgment disregarding the jury's actual-damages finding for fraud cannot be supported on this ground.

D. Tho's Arguments

 In her motion to disregard the jury's actual-damages findings for fraud, Tho
argued that "the jury misunderstood the questions and mistakenly entered an amount
less than intended"; that the jury "clearly intended to award [Tho] $40,000 . . ."; that
the jury "of course, intended to award [Tho] $40,000 . . ."; and that the court should
"modify the judgment to reflect the actual damages that the jury intended to award
[Tho]." She also urged that $40,000 was "legally established" (which we interpret
to mean conclusively proved) by the evidence and also "by the great weight and
preponderance of the evidence." On appeal, in response to the Huynhs' point of error
three, Tho reasserts these arguments.

 Tho's arguments evidence a misunderstanding of the law. Whether the jury
was "mistaken" in its award, or whether the great weight and preponderance of the
evidence is contrary to the jury's finding, is not the standard for determining whether
a trial court erred in disregarding a jury finding. See McFerren, 788 S.W.2d at 78. 
Rather, the correct standard is whether some evidence, viewed in the most favorable
light, supports the jury's finding; if the answer is yes, then the finding may not be
disregarded. See Tex. R. Civ. P. 301; Spencer, 876 S.W.2d at 157; McFerren, 788
S.W.2d at 78. Additionally, we have already rejected the argument that Tho
conclusively proved $40,000 in benefit-of-the-bargain damages because her
testimony of $20,000 in lost profits was speculative and thus incompetent.

 Finally, we note that the jury's finding of $20,000 for benefit-of-the-bargain
damages for fraud was exactly what Tho's counsel's closing argument asked the jury
to find:

 The damages are the same for these two questions. It's
$20,000 they got from her and $20,000 is what they told
her she was going to get. This is the difference in what she
would have received.

 Tho's counsel made a similar argument concerning contract-breach damages. 
We find it hard to imagine that, given counsel's explicit instructions to enter only
$20,000 for benefit-of-the-bargain damages for fraud, the jury was somehow
mistaken or confused in awarding that exact sum. A party cannot ask the jury to
award a sum certain and then complain when the jury follows that request. See Tex.
Mut. Ins. Co. v. Ray Ferguson Interests, Inc., No. 01-02-00807-CV, 2006 WL
648834, at *14 (Tex. App.--Houston [1st Dist.] Mar. 16, 2006, pet. denied.) (memo.
op.) ("In closing argument, the Fund reiterated that the jury could use either method
to calculate its attorney's fees . . . . The Fund cannot tell the jury that it may award
fees on either of two bases and then, on appeal, challenge the fees that the jury
awarded on the ground that the jury chose one of the bases that the Fund itself
suggested.").

E. Conclusion

 For the reasons stated above, we sustain the Huynhs' point of error three.

Exemplary Damages (6) 


 In point of error four, the Huynhs argue that "[t]he judgment should be reversed
and remanded or remitted, because the award of exemplary damages violates
constitutional due process and is not supported by the evidence."

A. Waiver

 Tho contends that the Huynhs waived their right to object to the exemplary
damages awarded "because it was never plead [sic] and therefore is waived." 

 Questions of the excessiveness of actual damages and requests for remittitur
present challenges to the factual sufficiency of the evidence. Maritime Overseas
Corp. v. Ellis, 971 S.W.2d 402, 406 (Tex. 1998); Carter v. Steverson & Co., 106
S.W.3d 161, 168 (Tex. App.--Houston [1st Dist.] 2003, pet. denied); Hawthorne v.
Guenther, 917 S.W.2d 924, 937 (Tex. App.--Beaumont 1996, writ denied). Because
the remedy sought by a factual-sufficiency challenge is a new trial, factual-sufficiency
complaints must be preserved by a motion seeking that relief. Tex. R. Civ. P.
l324(b)(4); C.M. Asfahl Agency v. Tensor, Inc., 135 S.W.3d 768, 796 (Tex.
App.--Houston [1st Dist.] 2004, no pet.); McDade v. Tex. Commerce Bank, 822
S.W.2d 713, 721 (Tex. App.--Houston [1st Dist.] 1991, writ denied). A request for
relief by remittitur must, therefore, be preserved in the trial court by a motion that
seeks remittitur, whether filed independently or as part of a motion for new trial. See
Hawthorne, 917 S.W.2d at 937. Accordingly, we reject Tho's contention because the
Huynhs raised this argument in their "Motion for New Trial/and or Motion for
Remittitur," which properly preserved their exemplary-damages complaint. 

B. Merits

 1. Standard of Review

 The Texas Supreme Court has explained, the standard of review for an
excessive damages complaint is factual sufficiency of the evidence. Maritime
Overseas Corp., 971 S.W.2d at 406. A court of appeals may vacate a damage award
or suggest a remittitur only if the evidence for the award is "so factually insufficient
or so against the great weight and preponderance of the evidence as to be manifestly
unjust." Transp. Ins. Co. v. Meriel, 879 S.W.2d 10, 30 (Tex. 1994) (quoting Pope
v. Moore, 711 S.W.2d 622, 624 (Tex.1986)). Accordingly, in assessing the Huynhs'
challenge to the factual sufficiency of the evidence to support the jury's findings of
exemplary damages, we must weigh all the evidence both that supporting and that
conflicting with the finding, and may set aside the finding only if it is so against the
great weight and preponderance of the evidence as to be clearly wrong and manifestly
unjust. (7) See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Minucci v. Sogevalor,
S.A., 14 S.W.3d 790, 794 (Tex. App.--Houston [1stDist.] 2000, no pet.); see also
Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). In conducting our
review, however, we must be mindful of the fact finder's role as the sole determiner
of credibility of the witnesses and the weight to give their testimony and may not
substitute our opinion for the fact finder's solely because we might have resolved the
facts differently. Herbert v. Herbert, 754 S.W.2d 141, 144 (Tex. 1988); M.D.
Anderson Hosp. & Turnover Inst. v. Felter, 837 S.W.2d 245, 247 (Tex.
App.--Houston [1st Dist.] 1992, no pet.).

 In considering the Huynhs' challenge to the constitutionality of the jury's
findings of exemplary damages, our review is de novo. See State Farm Mut. Auto.
Ins. Co. v. Campbell, 538 U.S. 408, 418, 123 S. Ct. 1513, 1520 (2003); Bunton v.
Bentley, 153 S.W.3d 50, 54 (Tex. 2004). Under the Due Process Clause of the
Fourteenth Amendment, based on "elementary notions of fairness enshrined in our
constitutional jurisprudence," exemplary damages must not be grossly excessive or
arbitrarily imposed on the tortfeasor. Campbell, 538 U.S. at 416-17, 123 S. Ct. at
1519-20 (citing Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424,
433-34, 121 S. Ct. 1678, 1684 (2001)); see Bunton, 153 S.W.3d at 54 (citation
omitted) (holding that de novo review is appropriate to "ensure that exemplary
damages are not 'grossly disproportional' to the gravity of the defendant's conduct").
We assume that a plaintiff is made whole by compensatory damages and that
exemplary damages are awarded only for the purposes of deterrence or retribution.
Campbell, 538 U.S. at 416, 419, 123 S. Ct. at 1521 . 

 2. Applicable Law

 In reviewing whether the jury's finding of exemplary damages violates the
Huynhs' due process rights, we examine the three guideposts adopted by the United
States Supreme Court: (1) the degree of reprehensibility of the defendant's
misconduct; (2) the disparity between the actual or potential harm suffered by the
plaintiff and the exemplary damages awarded; and (3) the difference between the
exemplary damages awarded by the jury and the civil penalties authorized or imposed
in comparable cases. Campbell, 538 U.S. at 418, 123 S. Ct. at 1520 (citing BMW of
N. Am., Inc. v. Gore, 517 U.S. 559, 575, 116 S. Ct. 1589, 1598 (1996)); see also Tony
Gullo Motors I, L.P. v. Chapa, No. 04-0961, 2006 WL 3751591, at *4 (Tex. Dec. 22,
2006) (holding that Gore guideposts apply to appellate court's remittitur of
exemplary damages).

 The first Gore guidepost, degree of reprehensibility, is the most important
factor in considering the reasonableness of a punitive damages award. See Campbell,
538 U.S. at 419, 123 S. Ct. at 1520 (quoting Gore, 517 U.S. at 575, 116 S. Ct. at
1599). However, we remain mindful that "[t]hese [Gore] factors are intertwined with
each other and cannot be viewed in isolation." Bunton, 153 S.W.3d at 54. To
determine the degree of reprehensibility, we consider five factors: (1) whether the
harm was physical or economic; (2) whether the conduct constituted an indifference
to or reckless disregard of the health or safety of others; (3) whether the target of the
conduct was financially vulnerable; (4) whether the conduct was a repeated or an
isolated event; and (5) whether the harm was the result of intentional malice, trickery,
deceit or mere accident. Campbell, 538 U.S. at 419, 123 S. Ct. at 1521 (citing Gore,
517 U.S. at 576-77, 116 S. Ct. at 1599). The presence of any one of these factors
may still not be enough to support an award of exemplary damages. Id. The absence
of all of these factors renders the award suspect. Id. (8)

 For the second Gore guidepost, the disparity between harm suffered and the
exemplary damages awarded, we recognize that there is no mathematical formula, 
bright-line ratio, or rigid benchmark for determining the reasonableness and
proportionality of the award. See Campbell, 538 U.S. at 424-25, 123 S. Ct. at 1524. 
However, single-digit multipliers (e.g., five-to-one ratio of exemplary damages to
actual damages) are more likely to comport with due process. See id. at 425. 
Ultimately, our determination is based on the facts and circumstances of the
defendant's conduct and the harm to the plaintiff. Id. 

 For the third Gore guidepost, we compare the exemplary damages awarded to
civil or criminal penalties imposed in comparable cases. Id. at 428, 123 S. Ct. at
1526. However, we analyze comparable criminal penalties only in the context of
seriousness of the action and not for determining the dollar amount of the award. Id.

 The factors set forth in Alamo National Bank v. Kraus, 616 S.W.2d 908, 910
(Tex. 1981), provide the framework for our factual-sufficiency review of exemplary
damages. See Meriel, 879 S.W.2d at 31(holding that when conducting factual-sufficiency review of exemplary-damage awards, court of appeals must detail relevant
evidence and explain why evidence does or does not support award in light of Kraus
factors); see also Dillard Dept. Stores, Inc. v. Silva, 148 S.W.3d 370, 373 (Tex. 2004)
(stating that Kraus factors have value in determining reasonableness of exemplary-damages award, but are not substitute for threshold inquiry of whether exemplary
damages should be awarded in first place). In determining the amount of exemplary
damages, the trier of fact considers: (1) the nature of the wrong; (2) the character of
the conduct involved; (3) the wrongdoer's degree of culpability; (4) the situation and
sensibilities of the parties concerned; (5) the extent to which such conduct offends a
public sense of justice and propriety; and (6) the net worth of the defendant. See
Kraus, 616 S.W.2d at 910; Tex. Civ. Prac. & Rem. Code Ann. § 41.011 (Vernon
1997). The award of exemplary damages must be specific as to each defendant. 
Kraus, 616 S.W.2d at 910. 

 We may reverse an exemplary-damages award or suggest a remittitur if we
determine that the evidence supporting the award is so factually insufficient or the
verdict is so against the great weight and preponderance of the evidence as to be
manifestly unjust. C.M. Asfahl Agency, 135 S.W.3d at 797. When reviewing an
exemplary damages verdict for excessiveness, we must detail the relevant evidence
and explain why, in light of the Kraus factors, the evidence either supports or does
not support the exemplary damages award. Kraus, 616 S.W.2d at 910; Ellis County
State Bank v. Keever, 915 S.W.2d 478, 479 (Tex. 1995); see Meriel, 879 S.W.2d at
31.

 Accordingly, we review the relevant evidence in light of the Kraus factors and
the three guidelines required by Gore. See Apache Corp. v. Moore, 960 S.W.2d 746,
748-49 (Tex. App.--Amarillo 1997, writ denied) (noting first four Kraus factors are
addressed by first Gore guideline and deeming Kraus factors to be continuing
considerations within framework of Gore guidelines). (9)

 3. Factual Sufficiency of Exemplary Damages

 We first consider the relevant evidence in light of the Kraus factors. See
Kraus, 616 S.W.2d at 910. The Huynhs argue that the evidence is factually
insufficient under Kraus to support the exemplary damages findings because the
jury's findings and award are "so against the overwhelming weight of the evidence
as to be manifestly unjust." After reviewing all the relevant evidence, we conclude
that the jury could have found that the evidence supporting the award was factually
sufficient under Kraus. See id. The jury made a specific finding that the promissory
note was altered "with intent to defraud or harm another." The jury's finding of
fraud, and thus implicit finding of malice, evidences some degree of reprehensibility.

 We consider the evidence as to the nature of the wrong, the character of the
Huynhs' conduct involved, the degree of the Huynhs' culpability, and the extent to
which the Huynhs' conduct offends a public sense of justice and propriety. Our
review of the factual sufficiency of the evidence shows that the Huynhs did not repay
Tho the $20,000 initial investment or 10% of the projected $200,000 profit from the
sale of the business because no such sale occurred. Lang testified that as part of his
divorce he transferred the business and all of the marital assets to his wife and
retained responsibility for all of the liabilities. (10) When asked for repayment, Lang
wrote Tho a check from an account with insufficient funds. Lang testified to the jury
that he did not have the money in the account when he wrote the check.

 The evidence was also factually sufficient for the jury to have determined that
the Huynhs' actions in consciously concealing the nature of the agreement were
calculated. In considering the evidence as to the situation and sensibilities of the
parties concerned, we note that the Huynhs attempted to claim that they had not
borrowed the money and that Tho had released them from liability. At trial, the
Huynhs characterized the money exchange as a loan to another person, not as an
investment in their business. Specifically, the Huynhs claimed that Tho had loaned
money to Thomas and that Lang had been merely a guarantor. (11) Lang testified that
he wrote the check as security for a loan to Thomas. The Huynhs introduced a copy
of a promissory note that had handwritten comments in Vietnamese at the bottom that 
stated, "This loan of $20,000 since April 7th, 1997, was the amount indicated in the
check 225. Signed on [the] 1st, the month of June, 1997 under name of [Lang]." 
Thomas and Lang testified that Thomas had added the Vietnamese translation upon
the request of Tho and Lang. The Huynhs claimed this note, along with the additional
handwritten comments, released Lang from liability. However, Tho introduced the
original note, which did not contain the additional handwritten comments at the
bottom. The Huynhs could not explain why the terms of the original note did not
match those of the copy introduced by the Huynhs.

 Tho, David, and Anna testified that Tho had loaned money to Thomas, but that
that loan was a separate transaction that did not involve the Huynhs. Tho introduced
evidence that Thomas borrowed money from Tho to pay for his son's bail and legal
fees. A separate lawsuit was filed against Thomas, and a default judgment was
entered against him for that loan. 

 Lang denied that Sonny was in business with him. Sonny testified that he was
not a party to the contract and had no personal knowledge of the check. However, in
the Huynhs' first amended petition, Sonny alleged as follows: "I Sonny, testify that
the check was actually written and signed on or about December 1st, 1996, but
postdated to June 1st, 1997." Lang and Thomas also testified that Sonny was in
Vietnam during the time of the transaction. To the contrary, Sonny testified that he
was in Texas during the time of the transaction. Sonny produced a copy of his
passport, of which several pages were missing for the latter half of 1996. Lang later
admitted that Sonny was in the United States in 1997. Additionally, Tho and David
visited the shrimping dock where both Sonny and Lang were working. The check
that was given to Tho for repayment of her initial investment listed both Lang and
Sonny as the account owners.

 In considering all the evidence, we conclude that the jury could reasonably
have inferred from the evidence that the Huynhs' conduct was reprehensible. We
hold that the evidence was factually sufficient to support the jury's exercise of
discretion to award exemplary damages against the Huynhs and in favor of Tho. See
N. Am. Refractories Co. v. Easter, 988 S.W.2d 904, 920-21 (Tex. App.--Corpus
Christi 1999, pet. denied) (applying Kraus factors to find evidence factually sufficient
to support exemplary-damages award).

 4. Constitutional Excessiveness of Exemplary Damages 

 Next, we consider the three Gore principles in turn. First, we consider the
degree of reprehensibility of the Huynhs' conduct. There is no evidence that the harm
to Tho was physical. Neither was there evidence that the harm showed a reckless
disregard or indifference for Tho's health or safety or the health or safety of others. 
The record reflects that Tho was not an overly vulnerable target financially because
she dispensed loans on occasion, (12) owned a restaurant, and did not expect to be repaid
for the $20,000 in capital that she invested with Lang for at least three months. The
transaction was also a one-time event.

 The jury made a specific finding that the promissory note was altered "with
intent to defraud or harm another." That finding, along with the finding of fraud by
clear and convincing evidence, evidenced the jury's implicit belief in a degree of
reprehensibility sufficient to show malice, trickery, or deceit. The evidence showed
that Lang denied ever having borrowed money from Tho. Lang testified that the
check was merely collateral for a third-party loan and could be cashed if Thomas
defaulted on his interest payments to Tho; yet, the check was returned for insufficient
funds when cashed. Lang was unable to verify the date that the check was written
and whether there were sufficient funds in the account at that time. Lang asserted that
the promissory note with the Vietnamese handwriting at the bottom released his
obligation to Tho. Tho introduced the original note, which did not contain the
additional notation. Although the jury's finding of fraud, and thus implicit finding
of malice, evidences some degree of reprehensibility, we believe that that factor alone
is insufficient to support the amount of exemplary damages awarded. This is not to
say that no exemplary-damages award is supported by the evidence, but, rather, that
the amount awarded was excessive in light of the first Gore guidepost.

 In our analysis of the second Gore guidepost, we first reject the Huynhs'
argument that damages should be assessed based on a ratio of combined exemplary
damages to compensatory damages, rather than, as Tho argues, based on a ratio of
individual exemplary damages to compensatory damages. Because exemplary
damages are awarded on an individual basis and require separate jury findings as to
each defendant, the proper method for reviewing the constitutionality of exemplary
damages is to compare the exemplary damages awarded against each individual with
the compensatory damages awarded against that individual. Accordingly, the proper
comparison here is the amount of the exemplary damages awarded against each of
Lang and Sonny ($200,000) to the amount of the compensatory damages that should
have been awarded against Lang and Sonny jointly and severally ($20,000). This is
a 10-to-one ratio.

 We are mindful of the Supreme Court's instruction that "few awards exceeding
a single-digit ratio between punitive and compensatory damages, to a significant
degree, will satisfy due process." Campbell, 538 U.S. at 425, 123 S. Ct. at 1524.
Because the 10-to-one ratio of damages in this case exceeds single digits, we closely
examine the facts and circumstances of this case in determining whether the award
of exemplary damages is reasonable and proportionate to the harm. See Gullo Motors
I, L.P., 2006 WL 3751591, at *4; Bunton, 153 S.W.3d at 53. The facts and
circumstances of this case, as discussed above in the first prong of Gore, indicate that
the harm meriting exemplary damages was based on the transaction between Tho and
the Huynhs. Although the harm resulted from the Huynhs' malice, trickery, or deceit,
there was no physical harm, Tho was not a terribly vulnerable financial target, and the
transaction was a one-time event. The harm to Tho was purely economic. Thus, we
conclude that the disparity between the harm and the amount of exemplary damages
awarded is too great and, therefore, that the award cannot be supported by the second
Gore guidepost. Cf. Gullo Motors I, L.P., 2006 WL 3751591, at *4 (holding that
amount awarded by court of appeals exceeded constitutional limitations on exemplary
damages considering that defendant's fraudulent actions, although deceitful, did not
cause physical, rather than economic, harm; did not threaten health or safety of
others; did not involve repeated acts; and were not aimed at financially vulnerable
plaintiff). 

 In analyzing the third prong of Gore, we consider comparable criminal
penalties. (13) Under section 32.46 of the Texas Penal Code, securing execution of a
document by deception is a third-degree felony if the value of the pecuniary interest
is $20,000 or more but less than $100,000 and is punishable by a fine of up to
$10,000 and two to 10 years in prison. Tex. Pen. Code Ann. § 12.34 (Vernon 2003);
Id. § 32.46 (Vernon Supp. 2006); see, e.g., Myers v. Walker, 61 S.W.3d 722, 732
(Tex. App.--Eastland 2001, pet. denied) (holding that exemplary-damages cap in
section 41.008 of Civil Practice and Remedies Code did not apply because
defendant's fraudulent conduct fell within exception for securing execution of
document by deception (section 32.46 of Texas Penal Code), when defendant's false
representations contained within contract induced parties to enter into agreement). 
We consider the comparable criminal penalties in the context of the seriousness of the
Huynhs' actions and not for determining the dollar amount of the award. See
Campbell, 538 U.S. at 428, 123 S. Ct. at 1526. But see Gullo Motors I, L.P., 2006
WL 3751591, at *4 (declining to consider possibility that defendant could be found
criminally liable for actions upon which plaintiff sued under civil law because
plaintiff provided no proof that such sanction was ever awarded in similar case). The
comparable criminal penalties are serious because they involve possible time in
prison and up to $10,000 in fines.

 In consideration of all three Gore guideposts, we hold that the award of
exemplary damages exceeds the constitutional limitations on exemplary damages and
violates the Huynhs' substantive due process rights. Nonetheless, because the
Huynhs' conduct was reprehensible and the comparable criminal penalties are
serious, some award of exemplary damages is supported. 

 5. Conclusion 

 For the reasons stated above, we sustain the Huynhs' point of error four to the
extent that it challenges the Constitutional excessiveness of the exemplary-damages
award, and we overrule the Huynhs' point of error four to the extent that it challenges
the factual sufficiency of the evidence to support the award.

 Because there is sufficient evidence to support a lesser award of exemplary
damages for the reasons discussed above, we suggest a remittitur of $100,000
exemplary damages awarded against each of the Huynhs, which is five times actual
damages. See Tex. R. App. P. 46.3. Although there is no mathematical formula, 
bright-line ratio, or rigid benchmark for determining the reasonableness and
proportionality of the award, (14) we recognize that the Texas Supreme Court has
recently held in Gullo Motors I, L.P. that an appellate court's remittitur was
constitutionally excessive in a fraud case in which remittitur was more than four times
the total compensatory award and more than 17 times the economic award. See Gullo
Motors I, L.P., 2006 WL 3751591, at *4; accord Campbell, 538 U.S. at 424-25, 123
S. Ct. at 1524 (citing Gore, 517 U.S. at 581, 116 S. Ct. at 1602) (stating that award
of more than four times amount of compensatory damages might be close to line of
constitutional impropriety). But see Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1,
23-24, 111 S. Ct. 1032, 1046 (1991) (upholding exemplary-damages award that was
more than four times compensatory damages and more than 200 times out-of-pocket
expenses). However, Gullo Motors I, L.P. is distinguishable because compensatory
damages there were made up of three-fourths mental anguish and only one fourth
economic damages, while compensatory damages here were entirely economic. See
Gullo Motors I, L.P., 2006 WL 3751591, at *4 (observing "that emotional damages
themselves often include a punitive element"); cf. Campbell, 538 U.S. at 425-26, 123
S. Ct. at 1524-25 (reversing exemplary-damages award that was 145 times
compensatory damages when plaintiffs "suffered only minor economic injuries" and
"[t]he compensatory damages for the injury suffered here, moreover, likely were
based on a component which was duplicated in the punitive award."). 


Conclusion
 

 We modify the judgment to award $20,000 in actual damages against the
Huynhs, jointly and severally, and affirm the judgment as so modified, conditioned
on a remittitur of $100,000 of the $200,000 exemplary damages awarded against each
of the Huynhs. See Texaco, Inc. v. Pennzoil, Co., 729 S.W.2d 768, 866 (Tex.
App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.) (holding that considering type of
action, conduct involved, and need for deterrence, exemplary damages were excessive
and that trial court abused its discretion in not suggesting a remittitur; therefore
suggesting conditional remittitur); see also Larson v. Cactus Util. Co., 730 S.W.2d
640, 641 (Tex. 1987) (recognizing that "[i]f part of a damage verdict lacks sufficient
evidentiary support, the proper course is to suggest a remittitur of that part of the
verdict. The party prevailing in the trial court should be given the option of accepting
the remittitur or having the case remanded."); Tex. R. App. P. 46.3 (stating that
appellate court may suggest remittitur on its own motion when appellant complains
that there is insufficient evidence to support award and appellate court agrees, but
there is sufficient evidence to support lesser award). (15) In the event that a remittitur
is not filed with the Clerk of this Court within 20 days from the date of this opinion,
we will reverse the judgment and remand the case to the trial court for a new trial. 


 Tim Taft

 Justice


Panel consists of Chief Justice Radack and Justices Taft and Nuchia. 
1. We recognize that proving fraud for exemplary damages requires proof by
clear and convincing evidence, while proving fraud for actual damages
requires proof only by a preponderance of the evidence. See Browder v.
Eicher, 841 S.W.2d 500, 502 (Tex. App.--Houston [14th Dist.] 1992, writ
denied); see Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon 2003)
(stating that exemplary damages are authorized when claimant proves by clear
and convincing evidence that harm results from fraud, malice, or gross
negligence
). 

 

 Here, the jury made two separate findings regarding fraud. First, the jury
found that the Huynhs committed fraud by a preponderance of the evidence. 
Then, the jury made a separate finding that the harm to Tho resulted from fraud
by clear and convincing evidence and awarded exemplary damages. Because
the Huynhs' first and second points of error and arguments do not concern
exemplary damages, but, rather, liability, we do not address the jury's finding
that the Huynhs' committed fraud by clear and convincing evidence. The
Huynhs challenge regarding exemplary damages is addressed below.
2. We construe point of error one to argue only that there is no evidence that Lang
did not intend to pay the loan because although "the Huynhs" are mentioned
in passing twice in the argument, the subheading specifically names "Lang"
and the argument pertains to Lang only.
3. Thomas had borrowed money from Tho for his son's criminal defense legal
fees. A separate lawsuit was filed and judgment entered against Thomas for
his loan from Tho.
4. In contrast to Sonny's challenge on appeal, Lang does not challenge the factual
sufficiency of the jury's breach-of-contract finding in point of error one, but,
rather, argues that Lang's failure to repay the money to Tho was a breach of
contract, not fraud.
5. Jury question four provided, in pertinent part:


 QUESTION 4:

 

 What sum of money, if any, if paid in cash, would fairly
and reasonably compensate Plaintiff for her damages, if
any, that resulted from such fraud?

 INSTRUCTIONS:

 

 In answering questions about damages, answer each
question separately. Do not increase or reduce the amount
in one answer because of your answer to any other question
about damages. . . .

 

 1. The amount of money that Defendant(s) received
from Plaintiff: 

 

 $20,000

 

 2. The difference, if any, in the value that Plaintiff
received and the value it [sic] would have had if it
had been as represented.

 

 $20,000


 The actual-damages question for breach of contract was answered similarly.
6. The jury awarded a total of $5,000,000 in exemplary damages to
Tho--$2,500,000 against each of Huynhs. However, the final judgment
awarded Tho $200,000 in exemplary damages because Tho agreed voluntarily
to remit exemplary damages to the statutory cap limit. See Tex. Civ Prac. &
Rem Code Ann § 41.008 (Vernon Supp. 2006).
7. In the portion of their brief that challenges the sufficiency of the evidence for
exemplary damages, the Huynhs argue only that the evidence is factually
insufficient under Kraus because it is "against the great weight and
preponderance of the evidence."
8. As explained below, the Kraus factors, which provide the framework for our
factual-sufficiency review of exemplary damages, are considerations
encompassed within the Gore guideposts. See Alamo Nat'l Bank v. Kraus, 616
S.W.2d 908, 910 (Tex. 1981). The Kraus factors include: "(1) the nature of the
wrong, (2) the character of the conduct involved, (3) the degree of the
culpability of the wrongdoer, (4) the situation and sensibilities of the parties
concerned, and (5) the extent to which such conduct offends a public sense of
justice and propriety." Kraus, 616 S.W.2d at 910. 


 
9. We note that "the purpose of punitive damages is to protect society by
punishing the offender rather than to compensate the injured party." Hammerly
Oaks, Inc. v. Edwards, 958 S.W.2d 387, 391 (Tex. 1997). 
10. Lang was represented by an attorney in the divorce, but his wife was not. 
11. Sonny claimed that Lang had written the check on December 1, 1996 and post-dated the check for June 1, 1997. Likewise, Lang testified that he had written
the check on June 1, 1996 and post-dated it for one year to June 1, 1997.
12. David testified that people would borrow money from Tho in cash. He
testified that people had asked to borrow money from Tho on several
occasions, and would ask him to introduce them to Tho to get a loan.
13. We recognize that the Huynhs argued below in their "Objections to [Tho's]
Proposed Final Judgment" that their conduct was not a felony to which the
limits on exemplary damages do not apply. See Tex. Civ. Prac. & Rem. Code
Ann. § 41.008 (Vernon Supp. 2006) (limitation-on-amount-of-recovery
statute). Specifically, the Huynhs argued that the alteration of a promissory
note was not a felony that would except the damages cap under section 32.47
of the Texas Penal Code. Tex. Pen. Code Ann. § 32.47(a) (Vernon 2003)
(pertaining to fraudulent destruction, removal, or concealment of writing and
defining writing as (1) printing or any other method of recording information;
(2) money, coins, tokens, stamps, seals, credit cards, badges, trademarks; (3)
symbols of value, right, privilege, or identification; and (4) universal product
codes, labels, price tags, or markings on goods). The record does not reflect
that the trial court found that the Huynhs' alteration of the promissory note was
not excepted under any of the sections of the Texas Penal Code listed in the
limitation-on-amount-of-recovery statute, but, rather, that Tho agreed
voluntarily to remit exemplary damages to the statutory cap in a bench
memorandum:

 

 Thus, in order to move along and prevent the Defendants
from wasting assets, we will agree with Defense counsel
and remit the exemplary damages with the cap limits of
$200,000 per Defendant. Please do not consider this a
waiver of our position regarding exemplary damages as we
still consider the jury's assessment of $2,500,000.00
punitive damages against each Defendant is appropriate
given the Defendant's [sic] fraudulent conduct made the
basis of this lawsuit and testimony regarding the same at
trial.
14. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425, 123 S. Ct.
1513, 1524 (2003) (although declining to impose bright-line ratio that
exemplary-damages award cannot exceed, stating, "While these ratios are not
binding, they are instructive.")
.
15. Several other Texas courts of appeals have remitted exemplary damages. Harris v. Archer, 134 S.W.3d 411, 442, 449 (Tex. App.--Amarillo 2004, pet.
denied); Lesikar v. Rappeport, 33 S.W.3d 282, 320 (Tex. App.--Texarkana
2000, pet. denied); Apache Corp. v. Moore, 960 S.W.2d 746, 750 (Tex.
App.--Amarillo 1997, writ denied); Johnson v. J. Hiram Moore, Ltd., 763
S.W.2d 496, 503 (Tex. App.--Austin 1988, writ denied); Bank of N. Am. v.
Bell, 493 S.W.2d 633, 637 (Tex. Civ. App.--Houston [14th Dist.] 1973, no
writ); S.W. Inv. Co. v. Neeley, 455 S.W.2d 785, 785-86 (Tex. Civ. App.--Fort
Worth 1970, writ dism'd).